In the Matter of MORTIMER T. BURROWS, JR., et al., Respondents, v BOARD OF ASSESSORS FOR THE TOWN OF CHATHAM, Appellant, et al., Respondents, and ROBERT ABRAMS, as Attorney-General of the State of New York, Intervenor-Appellant. (And Another Proceeding.)

Third Department, December 29, 1983

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Nancy A. Spiegel* and *William J. Kogan* of counsel), for intervenor-appellant *pro se.*

*Connor, Curran, Connor & Schram* (*Theodore Guterman, II,* of counsel), for Mortimer T. Burrows, Jr., and others, respondents.

OPINION OF THE COURT

CASEY, J.

Subdivision 5 of section 458 of the Real Property Tax Law was applicable to the assessments challenged in these proceedings, and since the different treatment of similarly situated veterans resulting from the classification created by that statute lacks a rational basis and conflicts with the objective of the legislation, Special Term's judgments ordering an increase in petitioners' veterans' exemptions for the tax year under review must be affirmed (116 Misc 2d 133).

Subsequent to the decision in *Matter of Hellerstein v Assessor of Town of Islip* (37 NY2d 1), which held that all real property must be assessed at full value pursuant to the requirements of section 306 of the Real Property Tax Law, many local taxing jurisdictions throughout the State that were using fractional assessments converted to full value assessment, either voluntarily or by court order. Since there was no provision for any proportionate increase in the veterans' exemption created by section 458 of the Real Property Tax Law, conversion from a system of fractional assessment to full value assessment had a substantial impact on the value of those exemptions.[1] Subdivision 5 of section 458 of the Real Property Tax Law, added by chapter 134 of the Laws of 1979, provided for an increase (or decrease) in the veterans' exemption proportionate to the increase (or decrease) in the property's total assessment caused by a change in the manner of assessing. Pursuant to paragraph (a) of subdivision 5, the proportionate increase

---

1. In the example cited by Special Term, the Town of Chatham based its assessments on 10% of full value before the conversion to full value assessment. Thus, petitioners Burrows, whose real property had a full value of $40,000, were assessed at $4,000 with a veterans' exemption of $5,000. After the conversion, their property was assessed at the full value of $40,000 while the exemption remained at $5,000.

(or decrease) in the veterans' exemption was mandatory if the change in the manner of assessing was caused by court-ordered full value assessment. Pursuant to paragraph (b), however, the local taxing jurisdiction had the option of providing by local law for such a proportionate increase (or decrease) in the veterans' exemption where the change in the manner of assessing was caused by other than court-ordered full value assessment.

In each of the proceedings at bar, petitioners are owners of real property, for which veterans' exemptions had been granted, located in taxing jurisdictions that voluntarily converted to full value assessment but did not adopt local laws pursuant to the authority granted by section 458 (subd 5, par [b]) of the Real Property Tax Law. Petitioners have asserted a number of challenges to their assessments, including the claim that the classification created by section 458 (subd 5, pars [a], [b]) violates the equal protection clause and results in a denial of due process. Special Term agreed, finding no rational basis for treating holders of veterans' exemptions in taxing jurisdictions that voluntarily adopted full value assessment different from those in taxing jurisdictions that adopted full value assessment pursuant to court order.

■ The Attorney-General contends that subdivision 5 of section 458 of the Real Property Tax Law, as added by chapter 134 of the Laws of 1979, was not applicable to taxing jurisdictions, such as those herein, that converted to full value assessment prior to the effective date of the statute, based upon the theory that the statute should not be applied retroactively. We note, however, that application of the statute to tax years prior to its effective date is not at issue. Rather, we are concerned only with the question of whether the statute should be applied uniformly in tax years subsequent to its effective date (and prior to its expiration) irrespective of the date when the taxing jurisdiction converted to full value assessment. In our view, such uniform application was plainly intended by the Legislature.

The Attorney-General argues that the Legislature's use of words in the present tense renders the statute unambig-

uous and compels adherence to the general rule that statutes are to be applied only prospectively unless a contrary intent is clearly expressed (see McKinney's Cons Laws of NY, Book 1, Statutes, § 51, subds b, c). The absence of facial ambiguity, however, is rarely if ever conclusive (*Zappone v Home Ins. Co.,* 55 NY2d 131, 137). Indeed, it has been said that the rules of statutory construction "do not constrain a court to defeat the evident intention of the lawmaker" (*Abrams v Esposito,* 75 AD2d 528, 529, affd 54 NY2d 886, app dsmd 455 US 996), and insofar as remedial statutes are concerned, "the court should consider the mischief sought to be remedied and should favor the construction which will suppress the evil and advance the remedy" (*Matter of New York Life Ins. Co. v State Tax Comm.,* 80 AD2d 675, 677, affd 55 NY2d 758). "Remedial statutes are those 'designed to correct imperfections in prior law, by generally giving relief to the aggrieved party' " (*Coffman v Coffman,* 60 AD2d 181, 188). Subdivision 5 of section 458 of the Real Property Tax Law is clearly a remedial statute, designed to preserve the value of veterans' exemptions which would otherwise be reduced substantially by the local taxing jurisdiction's conversion to full value assessment (*Matter of Archer v Town of North Greenbush,* 80 AD2d 361, 362; see, also, NY Legis Ann, 1979, p 103).

Construing the statute as applying to all local taxing jurisdictions that converted to full value assessment, irrespective of the date of conversion, promotes the remedy and suppresses the mischief to a much greater degree than the severely restrictive construction advanced by the Attorney-General. The limited retrospective effect resulting from such a construction does not impair any vested rights, and it should be noted that this remedial statute was made effective immediately (L 1979, ch 134, § 2). Under these circumstances the rule requiring prospective application only does not apply (*Matter of Cady v County of Broome,* 87 AD2d 964, mot for lv to app den 57 NY2d 602). Finally, there is no merit in the Attorney-General's suggestion that the introduction of subsequent bills stating that the statute is applicable to taxing jurisdictions that converted to full value assessment prior to its effective date constitutes

legislative recognition that the statute, as originally enacted, did not so provide (see *Matter of Eastern Milk Producers Coop. Assn. v State of New York Dept. of Agric. & Markets,* 58 NY2d 1097, 1101).

Having concluded that subdivision 5 of section 458 of the Real Property Tax Law is applicable to the assessments under review in these proceedings, we turn to the question of whether the classification created by the statute violates the equal protection clause. Despite claims that the statute, on its face, classifies local taxing jurisdictions and/or real property, not veterans, the plain and unambiguous effect of the statute is to treat similarly situated veterans, i.e., those who hold real property tax exemptions on property located in taxing jurisdictions that have converted to full value assessment, differently by effectively granting an increase in the exemption to some veterans while denying an increase to certain other veterans. In short, the statute is directed at the class of veterans described above and only members of that class are harmed by the statute. These factors, derived from the impact of the statutory classification rather than its wording alone, compel the appropriate judicial scrutiny of the discriminatory treatment under the equal protection clause (see *Nyquist v Mauclet,* 432 US 1, 7-9).

In passing upon claims that the equal protection clause has been violated by discriminatory treatment in the area of taxation, the United States Supreme Court has long held that, "States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation" (*Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356, 359). The terms "palpably arbitrary" or "invidious" have been used to define the limits placed on this leeway by the equal protection clause (*Allied Stores of Ohio v Bowers,* 358 US 522, 530). Application of these principles has led to the rejection of an equal protection challenge to a Florida statute which granted real property tax exemptions to widows but not widowers, based upon a finding that the distinction rested " ' "upon some ground of difference having a fair and substantial relation to the object of the legislation" ' ", which was to help cushion the financial impact of the loss of a

spouse upon the sex for which that loss imposed the heaviest burden (*Kahn v Shevin,* 416 US 351, 355). We find no such "fair and substantial relation" here.

This court has previously acknowledged that "the obvious intent of [subdivision 5 of section 458 of the Real Property Tax Law] * * * was to lessen the immediate impact of increased taxes on eligible veterans caused by a shift to full value assessment" (*Matter of Archer v Town of North Greenbush,* 80 AD2d 361, 362, *supra*).[2] We fail to see how the statutory distinction, based upon whether the veteran's property is located in a taxing jurisdiction that voluntarily converted to full value assessment or in one that did so pursuant to court order, bears any relation to this objective. Indeed, since the statutory distinction results in the denial of a proportionate increase in some veterans' exemptions, there is an obvious conflict with the objective.

The Attorney-General speculates that perhaps the Legislature sought to provide an inducement to encourage local taxing jurisdictions to convert voluntarily to full value assessment. Accepting such speculation under the theory that we must search for "any 'conceivable state of facts which would support' the classification" (*Matter of Catapano Co. v New York City Fin. Admin.,* 40 NY2d 1074, 1075, app dsmd 431 US 910), we nevertheless find no rational basis for the distinction drawn in subdivision 5 of section 458. It does not logically and rationally follow that a local taxing jurisdiction not otherwise inclined to do so would voluntarily convert to full value assessment solely for the purpose of obtaining the option to deny veterans a proportionate increase in their exemptions. Accordingly, there is no fair and substantial relationship between the objective suggested by the Attorney-General and the statutory classification. In any event, there is nothing rational in using the discriminatory treatment of veterans as the proverbial carrot to entice local taxing jurisdictions to do that which, according to *Matter of Hellerstein v Assessor of Town of Islip* (37 NY2d 1, *supra*), they were already required by statute to do. Nor do we see any relation

---

**2.** In *Archer,* we rejected an equal protection challenge to the statute by property owners who did not have veterans' exemptions.

between the statutory classification and an intent to secure some balance and equity in the midst of the chaotic patchwork of real property reassessments throughout the State, another objective suggested by the Attorney-General. On the contrary, the classification manifestly perpetuates imbalance and inequity. In the absence of a rational basis in fact for the discriminatory treatment resulting from subdivision 5 of section 458 of the Real Property Tax Law, Special Term properly found a violation of the equal protection clause (see *Juleah Co. v Incorporated Vil. of Roslyn,* 56 AD2d 483, affd 44 NY2d 845).

Turning to the remedy, we reject the Attorney-General's claim that the appropriate relief is to strike the provision which makes the proportionate increase in veterans' exemptions mandatory, thereby making the increase optional for all taxing jurisdictions that convert to full value assessment irrespective of whether the conversion was voluntary or court ordered. Special Term's remedy, which effectively makes the increase mandatory for all taxing jurisdictions that convert, is consistent with the statutory objective of easing the impact of conversion on eligible veterans, which was recognized by this court in *Archer* (*supra*) as the obvious intent of the legislation. The judgments should be affirmed.

LEVINE, J. (dissenting). As the majority notes, the differing classifications of veterans in this tax statute are to be tested under the most minimal of equal protection standards. In the context of both the history of assessment practices in this State and their effect on veterans' exemptions, and of the political ramifications of the decision in *Matter of Hellerstein v Assessor of Town of Islip* (37 NY2d 1), a rational justification may be found for the classifications involved here sufficient to uphold the statute.

Prior to *Hellerstein* (*supra*), the prevailing practice among local taxing authorities was to assess real property at less than full value. Fractional assessments withstood various legal challenges so long as they were imposed uniformly within the specific tax district (*C.H.O.B. Assoc. v Board of Assessors,* 16 NY2d 779, affg 22 AD2d 1015, affg 45 Misc 2d 184; *McAlevey v Williams,* 41 AD2d 971; *Nicolette v Village of Clyde,* 34 AD2d 202; *Matter of Connolly v*

*Board of Assessors,* 32 AD2d 106, mot for lv to app den 25 NY2d 739). At the same time, the State-mandated veterans' exemption, now under consideration, has always been couched exclusively in terms of an actual dollar amount ("eligible funds") up to a maximum of $5,000 to be subtracted from the property's stated assessed value, without reference to the fractional assessment formula applied by the local assessor. The necessary result of this application of the statutory exemption to assessed valuations, without adjustment to reflect their relationship to full value, was to permit a wide disparity among local tax districts as to the actual financial benefit of the veterans' exemption. In other words, through their power to select a low or high "equalization rate", local assessors could effectively enhance or virtually dissipate the actual tax benefit derived from the veterans' exemption within their taxing jurisdictions. Not surprisingly, since the nondiscriminatory imposition of local taxes is generally a matter of local discretion not subject to judicial review, the State-wide disparities in property tax treatment of veterans has also withstood constitutional and other legal challenges (*Matter of Town of Huntington v State Bd. of Equalization & Assessment,* 53 AD2d 6, mot for lv to app den 40 NY2d 805; *Nicolette v Village of Clyde, supra*).

The *Hellerstein* decision (*supra*) did nothing more than construe the then existing language of section 306 of the Real Property Tax Law as absolutely prohibiting local tax districts from assessing their real property at less than full value. No constitutional question concerning the prevailing fractional assessment usage was therein resolved. As the dissenters in *Hellerstein* noted, "[n]o one questions that the Legislature could explicitly authorize the present practice; there would be no constitutional impediment" (*Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1, 18, *supra*). Nor did the *Hellerstein* decision consider the effect of the prior fractional assessment practice in creating wide diversity among local tax districts as to the practical benefits derived from the veterans' exemption. Nevertheless, *Hellerstein's* far-reaching impact on the interests of various classes of property owners, veterans included, created a storm of political controversy still not yet finally

resolved. Certainly it cannot be disputed that by 1979, when chapter 134 of the Laws of 1979 was enacted as a temporary, stopgap measure to soften the impact of *Hellerstein* on property-owning veterans, the Legislature was well aware of widespread local resistance to the implementation of the decision.

In my view, the Legislature rationally could have concluded that for court-ordered changes to full value assessment, it was appropriate temporarily to ameliorate the harsh, unintended adverse consequences of the involuntary changes by maintaining the *status quo* and automatically increasing the exemption proportionately to the changes from fractional to full value. On the other hand, it seems equally rational for the Legislature to have concluded that, despite the possibility that the *Hellerstein* decision (*supra*) might have provided additional impetus for localities voluntarily to adopt full value assessment, veterans in such localities were only entitled to some lesser degree of protection. First, as previously discussed and in contrast to the court-ordered situation, even before *Hellerstein,* the actual tax benefit accruing from the exemption was subject to the vagaries of *voluntary* changes in assessment formulas by local municipalities. Second, both before and after *Hellerstein* (again in contrast to the court-ordered situation), veterans in tax districts contemplating adoption of full value had the option to unite with other interested groups of property owners to prevent adoption of full value assessments through recourse to the political process. The credibility of this option has been demonstrated by the subsequent legislative extension of the section now under review and the repeal of the provision of the Real Property Tax Law (§ 306) upon which the *Hellerstein* decision was based (L 1981, ch 1057).

For the foregoing reasons, the Legislature could reasonably have concluded that it was sufficient relief to veterans in districts contemplating voluntary adoption of full value assessment merely to remove the statutory $5,000 maximum for the veterans' exemption in such instances and to permit, rather than mandate, such districts to increase the exemption beyond that ceiling, proportionately to the increase from fractional to full-value assessment. In effect,

veterans in districts contemplating the change to full value were thereby given a second political option to protect the actual benefit of their exemptions.

Where, as here, a tax statute is challenged on equal protection grounds, the scope of judicial review is extremely limited. The tax is presumed to be constitutional, and the burden is on the challenger to negate every conceivable rational basis to support it (*Lehnhausen v Lake Shore Auto Parts Co.*, 410 US 356, 364; *Matter of Davis*, 57 NY2d 382, 389; *Matter of Catapano Co. v New York City Fin. Admin.*, 40 NY2d 1074, app dsmd 431 US 910). My analysis leads me to the conclusion that petitioners have failed to meet that burden here.

Accordingly, I vote to reverse Special Term and to dismiss the petition.

SWEENEY, J. P., KANE and WEISS, JJ., concur with CASEY, J.; LEVINE, J., dissents and votes to reverse in a separate opinion.