■ In the Matter of MUTUAL REDEVELOPMENT HOUSES, INC., Petitioner, v ARTHUR J. ROTH, as Commissioner of Taxation and Finance of the State of New York, et al., Respondents. [763 NYS2d 124] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales tax assessment imposed under Tax Law article 28.

Petitioner, a corporation organized under Private Housing Finance Law article 5, owns and operates a limited equity

housing cooperative consisting of, inter alia, approximately 2,800 moderate-income residential apartments and various commercial spaces, including retail stores and professional offices. Petitioner's residential tenants are all shareholders of petitioner, and their relationship with petitioner is governed by a standard occupancy agreement. In addition to purchasing shares in petitioner, each tenant-shareholder pays a monthly carrying charge, representing his or her allocated share of petitioner's budgeted operating costs. Petitioner's commercial tenants, on the other hand, are not shareholders, and their relationship with petitioner is governed by a commercial lease agreement, with the underlying rentals subject to market rates.

Between 1960 and 1982, petitioner purchased electricity from Consolidated Edison and, in turn, provided electricity to its tenant-shareholders pursuant to their occupancy agreements and to most of its commercial tenants pursuant to their various leases. During this time period, the tenant-shareholders paid no separate fee for their electrical service; rather, such costs were included in each tenant-shareholder's monthly carrying charge. In 1982, petitioner installed submeters for all residential units in the cooperative and began charging the tenant-shareholders based upon the amount of electricity actually consumed. Thereafter, in 1986, petitioner began operating a co-generation plant that produces all of the electricity consumed by petitioner and its residential and commercial tenants, with the exception of a few commercial tenants who obtain their electricity directly from Consolidated Edison.

In September 1993, a representative from the Department of Taxation and Finance performed a sales tax field audit of petitioner for the period September 1, 1990 to November 30, 1993. During the audit period, petitioner submetered each residential and commercial tenant's consumption of electricity and billed the tenant accordingly. This charge was reflected as a separate line item on each tenant-shareholder's and each commercial tenant's monthly bill. Petitioner did not, however, collect or pay sales tax on the electricity that it generated and provided to its residential and commercial tenants.

As a result of the audit, the Department concluded that petitioner's sale of electricity to its tenants constituted a separate, identifiable transaction and, as such, petitioner was issued a notice of determination assessing sales tax due for the audit period in the amount of $186,479.34, plus minimum

interest.\* Ultimately, respondent Tax Appeals Tribunal sustained the underlying determination, finding the requisite indicia of a separately identifiable sales transaction. Petitioner thereafter commenced this proceeding seeking to annul the Tribunal's determination.

Preliminarily, as resolution of this matter involves a question of pure statutory interpretation, we perceive no need to defer to respondents' stated expertise in this area (*see Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). That said, Tax Law § 1105 (b) (1) imposes a 4% tax upon, inter alia, "[t]he receipts from every sale, other than sales for resale, of the following: (A) gas, electricity, refrigeration and steam, and gas, electric, refrigeration and steam service of whatever nature." To that end, Tax Law § 1101 (b) (5) defines "sale," "selling" or "purchase" as:

"Any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume * * *, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, including the rendering of any service, taxable under this article, for a consideration or any agreement therefor." Petitioner, relying upon the Court of Appeals' decisions in *Debevoise & Plimpton v New York State Dept. of Taxation & Fin.* (80 NY2d 657 [1993]) and *Empire State Bldg. Co. v New York State Dept. of Taxation & Fin.* (81 NY2d 1002 [1993], *affg* 185 AD2d 201 [1992], *affg* 150 Misc 2d 747 [1990]), contends that the electric service it provides to its residential and commercial tenants is merely incidental to the rental of the underlying premises and, as such, does not constitute a separate, identifiable sale subject to taxation under Tax Law § 1105 (b). Respondent Commissioner of Taxation and Finance, relying upon those same cases, argues that the imposition of sales tax upon petitioner's independent and identifiable sale of self-generated electricity to its tenants is entirely proper. Before addressing the merits of the parties' respective claims, a brief review of the cited cases is in order.

In *Debevoise & Plimpton v New York State Dept. of Taxation & Fin.* (*supra*), the plaintiff rented office space pursuant to a lease agreement (*id.* at 660). That agreement provided that the plaintiff would pay a fixed rent, which included the supply of heat, ventilation and air conditioning (hereinafter HVAC) services during normal business hours on regular business days (*id.*). Should the plaintiff desire HVAC services during nonbusiness days and hours, it was required to pay additional rent

---

\* According to respondent Commissioner of Taxation and Finance, statutory interest and penalties were waived.

for the provision of such services during those times (*id.*). The Department took the position that the furnishing of additional HVAC services to the plaintiff constituted a sale of refrigeration and steam service under Tax Law § 1105 (b) and sought to tax the transaction.

In rejecting the Department's argument on this point, the Court of Appeals held that Tax Law § 1105 (b) "authorizes a tax on a utility service only when furnished in an identifiable sale transaction as a commodity or article of commerce" (*id.* at 660). Stated another way, "the statute applies only to separate transactions which have as their primary purpose the furnishing of utilities or utility service" (*id.* at 661). As the provision of after-hours HVAC services was, in the Court's view, merely incidental to the rental of the subject office space, the additional rent paid for such services was not subject to taxation (*id.*).

In *Empire State Bldg. Co. v New York State Dept. of Taxation & Fin.* (*supra*), the plaintiff redistributed nonmetered electric service to the majority of its tenants and collected rent for such service, which was computed according to a charge per square foot formula contained in each tenant's lease, and the Department sought to collect sales tax upon the nonmetered "electricity rent inclusion charges" paid by the plaintiff's tenants (*Empire State Bldg. Co. v New York State Dept. of Taxation & Fin.*, 150 Misc 2d 747, 748-749 [1990]). Supreme Court rejected the Department's attempt to impose a sales tax, finding that there had been no "sale" or "resale" of electricity by the plaintiff to those lessees who did not have individual submetering; rather, there had been a mere redistribution of electricity (*id.* at 750). As to the cost imposed for such service, the court held that the charge per square foot formula applied by the plaintiff "for computing the amount of additional rent for the redistribution of nonmetered electricity does not represent the actual economic cost of the service supplied but constitutes an element of the rent" (*id.* at 750). The First Department affirmed, finding that the nonmetered electric service charges were "for use and occupancy and [were] not indicative of the amount of electricity consumed by each tenant" (*Empire State Bldg. Co. v New York State Dept. of Taxation & Fin.*, 185 AD2d 201, 201 [1992]). In a one-paragraph opinion, the Court of Appeals also affirmed, holding that the "tenants' payment of an Electricity Rent Inclusion Factor (ERIF) was for electric service provided only as an incident to the rental of commercial premises in plaintiff's building and not as part of 'separate transactions which have as their primary purpose the furnishing of utilities or utility services'" (*Empire State Bldg. Co. v*

*New York State Dept. of Taxation & Fin.*, 81 NY2d 1002, 1003-1004 [1993], *supra*, quoting *Debevoise & Plimpton v New York State Dept. of Taxation & Fin.*, 80 NY2d 657, 661 [1993], *supra*).

Based upon our review of the record as a whole, and giving due consideration to the holdings of *Debevoise* and *Empire*, we cannot say that the Tribunal erred in concluding that petitioner indeed has engaged in a separate, identifiable sales transaction that is properly subject to taxation. As a starting point, unlike the landlords in *Debevoise* and *Empire*, petitioner operates its own co-generation plant and produces all of the electricity at issue. Hence, petitioner is producing and supplying electricity; it is not merely redistributing it (*compare Empire State Bldg. Co. v New York State Dept. of Taxation & Fin.*, 81 NY2d 1002, *supra*). Additionally, during the audit period, all of petitioner's tenant-shareholders and all but three of petitioner's commercial tenants were required to purchase electricity from petitioner pursuant to the respective occupancy agreements and leases. Thus, it is the supplying of basic electric service, not the provision of additional services during additional hours, that is at issue (*compare Debevoise & Plimpton v New York State Dept. of Taxation & Fin.*, *supra*). Although the underlying commercial leases denominate the electric charge as additional rent, this characterization is not determinative and, further, cannot withstand scrutiny when one considers that petitioner billed for such service separate and distinct from any additional charges incurred by the tenants and listed the revenues derived therefrom as a source of income separate and apart from the tenant-shareholders' carrying charges and the commercial tenants' rent. Finally, as noted previously, petitioner billed for electric service based upon each tenant's actual metered usage, as opposed to a charge per square foot formula (*compare Empire State Bldg. Co. v New York State Dept. of Taxation & Fin.*, 81 NY2d 1002 [1993], *supra*).

Although no single factor is dispositive, the foregoing evidence, all of which was considered and credited by the Tribunal, provides sufficient indicia of a separate, identifiable sales transaction that has as its primary purpose the furnishing of a utility or a utility service (*see Debevoise & Plimpton v New York State Dept. of Taxation & Fin.*, *supra* at 661) and, hence, such transaction is subject to sales tax under Tax Law § 1105 (b). In short, the facts underlying this proceeding make plain that, unlike the landlords in *Debevoise* and *Empire*, petitioner here provided electricity in a manner that went well beyond supplying a service that was merely incidental to the rental of the premises. Finally, although our primary focus is,

of course, upon the meaning to be afforded Tax Law § 1105 (b), we agree with the Commissioner that policy considerations also favor the imposition of a sales tax upon petitioner's sale of self-generated electricity to its tenants. Were such service provided by an outside utility, there is no question that such utility would have to charge sales tax to its retail customers. Allowing petitioner to provide that same service without collecting sales tax would, in our view, create an unlevel playing field.

Mercure, J.P., Peters, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.