■ In the Matter of CRUCIBLE MATERIALS CORPORATION et al., Appellants, v NEW YORK POWER AUTHORITY, Respondent. [857 NYS2d 261]—

Peters, J. Appeal from a judgment of the Supreme Court (Sackett, J.), entered May 14, 2007 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to, among other things, compel respondent to comply with Economic Development Law § 189 (a) (5).

The Power for Jobs (hereinafter PFJ) program was enacted in 1997 for the purpose of providing low cost power to businesses in an effort to maintain jobs and encourage decisions to retain, attract or expand businesses in New York (*see* L 1997, ch 316, § 1). Respondent was charged with administering the PFJ program, a function that included entering into contracts with

recipients for the purchase of power, procuring such power and making it available to recipients through their local distributors (*see* Public Authorities Law § 1005 [b], as added by L 1997, ch 316, § 2).

At the inception of the program, the supply of electricity was phased in over a three-year period and successful applicants were granted three-year contracts (*see* Economic Development Law § 189, as added by L 1997, ch 316, § 6).[1] In 2000 and 2002, the PFJ program was amended to add a fourth and fifth phase (*see* L 2000, ch 63, part KK, § 4; L 2002, ch 226, § 5). The Legislature again amended the PFJ program in 2004, providing recipients with the option of either extending their contracts with respondent through December 31, 2005 or, subsequent to the expiration of their contracts, selecting the "electricity savings reimbursements" option (hereinafter the rebate program) through December 31, 2005 (*see* L 2004, ch 59, part T, §§ 3, 4). Under the rebate program, participants would purchase power from their local utility, and their "basic reimbursement" would consist of the difference in price between the rate they paid for power each quarter and the average cost of power under their final year of their phase four or five contract (L 2004, ch 59, part T, § 3).[2] The PFJ program was again amended in 2005, extending it through December 31, 2006 (*see* L 2005, ch 59, part P, § 2).

In August 2006, the PFJ program was amended, yet again, in an atmosphere in which participants had been charged more for power in 2006 under the program than they would have paid had they purchased power from their local utility (*see* L 2006, ch 645; Letter from Senator James Wright, Bill Jacket, L 2006, ch 645). Thus, in addition to extending the program through June 30, 2007, the amendments provided relief to program participants through a restitution benefit and offered an opportunity for manufacturers to convert to the rebate program (*see* L 2006, ch 645, § 3). In response to these amendments, respondent wrote to program participants in October 2006, stating that they were eligible to apply for extensions of their program contracts until June 30, 2007. In November 2006, respondent further interpreted the amendments, advising that

**1.** The Legislature, in a later amendment, termed the first year the "first phase," the second year the "second phase" and the third year the "third phase" (L 2000, ch 63, part KK, § 4).

**2.** Because participants were limited in the quantity of power they were permitted to buy through the PFJ program, the rebate program limited reimbursement to that quantity of power that was purchased by the recipient in the corresponding quarter of the final year of its contract under the program (*see* L 2004, ch 59, part T, § 3).

manufacturers who chose to opt for the rebate program would be precluded from receiving restitution for overpayments in 2006, that rebates for new enrollees in the program would be calculated based on the participant's average monthly price during the 12 months immediately prior to joining the program (which meant 2006 for most new participants) and that calculations and payment of restitution benefits for 2006 would be made at the conclusion of the program in June 2007 and likely paid in the fourth quarter of 2007.

Petitioners are manufacturing companies that began participating in the PFJ program in 1999 pursuant to three-year contracts under phase two and subsequently extended their agreements until December 31, 2005. After the 2005 PFJ program amendments, they chose to extend their contracts with respondent until December 31, 2006 rather than participate in the rebate program. In reply to respondent's November 2006 letter interpreting the 2006 amendments, petitioner Crucible Materials Corporation protested respondent's interpretation of the statute but, nonetheless, elected to extend its contract in order to receive the restitution benefit. Petitioner Syracuse Casting Sales Corporation likewise extended its contract with respondent rather than selecting the rebate program.

In February 2007, petitioners commenced this proceeding to compel respondent to comply with Economic Development Law § 189 (a) (5) and sought an inquest to determine the amount of damages incurred by petitioners due to respondent's failure to comply with the law as amended. Supreme Court dismissed the petition and further held that petitioners had no standing to contest respondent's calculation of the rebate option. Petitioners now appeal.

Petitioners first contend that Supreme Court erred in upholding respondent's interpretation that, under the 2006 PFJ amendments, a manufacturer's ability to receive the restitution benefit for 2006 and participate in the rebate program prospectively were mutually exclusive. As this issue involves a matter of pure statutory analysis, we need not defer to the agency's interpretation (*see Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 7 NY3d 451, 455 [2006]; *Matter of Sbriglio v Novello*, 44 AD3d 1212, 1214 [2007]; *Matter of Mutual Redevelopment Houses v Roth*, 307 AD2d 422, 424 [2003], *lv denied* 100 NY2d 516 [2003]). Rather, in interpreting the statute, we attempt to effectuate the legislative intent, giving clear effect to the plain meaning of the words employed (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 92; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205,

208 [1976]; *Matter of Sbriglio v Novello*, 44 AD3d at 1214). In addition, we liberally construe remedial statutes in favor of the intended beneficiaries and " 'consider the mischief sought to be remedied and . . . favor the construction which will suppress the evil and advance the remedy' " (*Matter of Burrows v Board of Assessors for Town of Chatham*, 98 AD2d 250, 253 [1983], *mod* 64 NY2d 33 [1984], quoting *Matter of New York Life Ins. Co. v State Tax Commn.*, 80 AD2d 675, 677 [1981], *affd* 55 NY2d 758 [1981]; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 124, 321; *Matter of DaimlerChrysler Corp. v Spitzer*, 26 AD3d 88, 89 [2005], *affd* 7 NY3d 653 [2006]).

The 2006 PFJ program amendment at issue provides, in pertinent part: "notwithstanding any provision of law to the contrary, for the period beginning January first, two thousand six, for recipients who choose to elect a contract extension, and whose unit cost of electricity under such contract extension exceeds the unit cost of electricity of the electric corporation which holds a franchise for electric services in the location of the recipient's facility, [respondent] shall reimburse the recipient for all dollars paid in excess of the unit cost of electricity of the electric corporation which holds a franchise for electricity services in the location of the recipient's facility. *In addition, a recipient that is a manufacturer that elected a contract extension, may choose to withdraw such election and instead may choose to elect an electricity savings reimbursement upon notice to the [respondent].* Such electricity savings reimbursement shall be calculated according to the formula for the basic reimbursement as explained in this paragraph" (L 2006, ch 645, § 3 [emphasis added]). The dispute between the parties concerns whether the emphasized language confers a benefit on manufacturers that is in addition to the benefit conferred in the previous sentence or whether the two are mutually exclusive. Viewing first the plain meaning of the language, the words "in addition" imply that the Legislature intended that manufacturers could avail themselves of both benefits. Likewise, where the amendment allows manufacturers to "choose to withdraw such election," we find that, without further definition, the reference must apply to the election that the manufacturer chose pursuant to the sentence immediately preceding and, thus, allows manufacturers to both elect a contract extension in order to qualify for the 2006 restitution benefit and, sometime thereafter, withdraw such election and participate in the rebate program prospectively. Significantly, this interpretation also effectuates the intent of the Legislature in its creation of the PFJ program,

which was to "make available low cost power to . . . businesses" (L 1997, ch 316, § 1).[3]

Nor are we persuaded that respondent correctly interpreted the formula to be used to calculate rebates under that program or that petitioners lack standing to contest such calculation, because they did not select the rebate option when given the opportunity to do so pursuant to the 2006 PFJ program amendments. In order to establish standing, a petitioner must demonstrate injury in fact and satisfy the "zone of interest" test; that is, the petitioner must show that "the administrative action will in fact have a harmful effect on [it] and that the interest asserted is arguably within the zone of interest to be protected by the statute" (*Matter of Dairylea Coop. v Walkley*, 38 NY2d 6, 9 [1975]; *see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773 [1991]; *Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs*, 46 AD3d 979, 981 [2007], *lv denied* 10 NY3d 706 [2008]). Indeed, "[a] fundamental tenet of our system of remedies is that when a government agency seeks to act in a manner adversely affecting a party, judicial review of that action may be had" (*Matter of Dairylea Coop. v Walkley*, 38 NY2d at 10).

Here, as manufacturers who participate in the PFJ program, petitioners were unquestionably within the zone of interest of

**3.** Part of the impetus for the 2006 amendments was that participants were actually paying more for energy under the program than they would have otherwise. In that light, an interpretation of the amendment that would cause manufacturing participants to forgo reimbursement for their 2006 overpayments in order to participate in the rebate program prospectively would contravene the very intent of the PFJ program.

Notably, the summary of provisions in the Assembly's memorandum in support of the legislation states that the bill "[r]equires [respondent] to allow PFJ manufacturers . . . to switch to a rebate form of the program, which would hold them harmless against rate fluctuations and would provide a discounted rate; *and*, [r]equires [respondent] to make up the difference between the rates the businesses would have paid for energy to their local utility as compared to the higher price [respondent] charged them under their contract extensions, retroactive to January 1, 2006" (Mem of Assembly, Bill Jacket, L 2006, ch 645 [emphasis added]). Other contemporaneous interpretations found in the legislative history likewise support this conclusion (*see e.g.* Mem of Div of Budget, Bill Jacket, L 2006, ch 645 [noting that the statute requires respondent to reimburse certain participants and, in addition, allows all manufacturers who chose the contract extension to switch to the rebate program upon notice to respondent]), as does a letter to respondent from bill sponsor Assembly Member Paul Tonko who, in response to respondent's interpretation, wrote that it appeared that respondent was "yet again, attempting to deny benefits to program participants which the State Legislature and the Governor have agreed to provide."

the 2006 amendments and, inasmuch as we have found that petitioners were eligible to receive a benefit under the amendments—the right to obtain a reimbursement and then elect to participate in the rebate program—but were deprived of receiving such pursuant to respondent's interpretation, we conclude that they have demonstrated injury in fact. Thus, Supreme Court erred in denying petitioners standing. Since we have determined that petitioners have standing and this is once again a question of pure statutory interpretation, we now address the merits of the rebate calculation dispute.

As provided in the 2006 amendments, the rebate to which petitioners were entitled was to be calculated according to the formula for the basic reimbursement (see Economic Development Law § 189 [a] [5], as amended by L 2006, ch 645, § 3). Under the basic reimbursement formula, the baseline amount against which a participant's current power costs are measured is "the average unit cost of electricity such recipient paid during the final year of the contract for power allocated under phase four or five of the [PFJ] program" (Economic Development Law § 189 [a] [5]). The statute also states unequivocally that delivery of power under both phase four and five of the PFJ program shall end no later than December 31, 2005 (see Economic Development Law § 189 [e] [2], [3]).[4]

Respondent's interpretation, that the rebate would be based upon participants' "average monthly price during the 12 months prior to joining the [r]ebate program, which for most will be calendar year 2006," simply ignores the language indicating that the final year representing the baseline must be for phase four or five power allocations. We note that earlier in that same sentence, when discussing the quantity of power for which participants may be reimbursed, the Legislature refers only to the "final year of the recipient's contract," evincing an intent to distinguish the two time periods (Economic Development Law § 189 [a] [5]). Moreover, respondent's interpretation would once again defeat the intent of the legislation. The fact that

_____

4. The Legislature apparently created internal inconsistencies in the statute in 2005 and 2006 by amending Economic Development Law § 189 (f) to allow the "term of contracts for allocations under the fifth phase of the program" to extend past December 31, 2005 (L 2005, ch 59, part P, § 3; see L 2006, ch 645, § 4). Inasmuch as that provision directly contradicts the statute's mandate that delivery under the phase five allocation shall end on or before December 31, 2005 (see Economic Development Law § 189 [e] [3]) and the latter mandate was in effect at the time the rebate program was instituted and the "basic reimbursement" formula was promulgated, we resolve any such inconsistency in favor of the legislative intent of the program as a whole, which is to provide low cost power to participants.

PFJ program participants were paying more for power in 2006 than they would have paid through their local utilities led in part to the promulgation of the 2006 amendments. To now find that such inflated prices should be used as a baseline for future rebates would be directly contrary to the Legislature's goal of providing low cost power to businesses, inasmuch as it was entirely possible that the 2006 program prices would remain higher than participants' actual costs from their local utilities in 2007. Indeed, in promulgating the amendments, the Legislature allowed manufacturers to switch to the rebate program in order to "hold them harmless against rate fluctuations and . . . provide a discounted rate" (Mem of Assembly, Bill Jacket, L 2006, ch 645). The logical conclusion is that the Legislature intended to extend to participants the program prices from 2005 or before, when buying directly from the program resulted in a "discounted rate" as compared to the market price charged by utilities. Thus, we find that Supreme Court erred in upholding respondent's determination, and now hold that the baseline for calculating the rebate should be the final year of the participant's contract under either phase four or five of the program, ending no later than December 31, 2005.

Finally, petitioners contend that Supreme Court erred in deferring to respondent's determination with regard to the time frame in which the restitution payments were to be made as authorized under Economic Development Law § 189 (a) (5). Where interpretation of a statute involves knowledge of underlying operational practices or entails an evaluation of factual data, courts regularly defer to the agency charged with administering the statute (*see Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 47 AD3d 133, 136 [2007], *lv granted* 10 NY3d 706 [2008]). Here, we find that the court properly deferred to respondent's interpretation, inasmuch as the Legislature did not evince an intent as to when such payments were to be made, and the timetable as promulgated by respondent did not contravene the intent of the statute.[5]

Mercure, J.P., Carpinello, Rose and Kavanagh, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed petitioners' application in its entirety; application granted to the extent that

---

5. However, we do note that in enacting a subsequent amendment to Economic Development Law § 183 (h) (4), the Legislature directed that respondent "shall expedite the awarding of [restitution] benefits" (L 2007, ch 89, § 1).

respondent is compelled to comply with Economic Development Law § 189 (a) (5) in a manner as interpreted by this Court's decision; and, as so modified, affirmed.