OPINION OF THE COURT
Phillip R. Rumsey, J.
Cortland Regional Medical Center (CRMC) commenced an action seeking declaratory judgment that the Department of Health (DOH) wrongfully determined that a nursing home operated by CRMC was not eligible to share in a fund created to assist financially disadvantaged nursing homes and, further, that the statute creating the fund violates the Equal Protection Clauses of the United States and New York Constitutions. CRMC now moves for summary judgment. Defendants cross-move for summary judgment dismissing the complaint or, in the alternative, for an order converting the action to a CPLR article 78 proceeding and then dismissing the petition.
A fund — consisting of $30 million annually — was created in 2004 to adjust the medical assistance rates of payments to financially disadvantaged nursing homes — also known as residential health care facilities — to promote financial stability and quality improvement (Public Health Law § 2808 [19]). Eligibility to receive a rate adjustment is based upon a nursing home’s operating margin over the most recent three-year period for which financial data are available (Public Health Law § 2808 [21] [a], [b]). For rate periods beginning prior to April 1, 2009, the available funds are required to be distributed to those nursing homes with negative operating margins in the bottom three quartiles of all nursing homes with negative operating margins.[1] The operating margin for some three-year period equals total *780 operating revenues for the three-year period, minus total operating expenses for the three-year period, divided by total operating revenues for the three-year period, with the result expressed as a percentage (Public Health Law § 2808 [21] [c]).
The financial data to be utilized in calculating the operating margin is provided to the DOH by all facilities by either an RHCF-4 cost report (RHCF-4) or an institutional cost report (ICR) (Public Health Law § 2808 [21] [b]). RHCF-4 cost reports are filed annually by freestanding nursing homes — which are all residential health care facilities that are not classified as hospital-based nursing homes (see 10 NYCRR 86-2.10 [a] [13])— and by all nursing homes operated by nursing home companies formed pursuant to Public Health Law article 28-A, including those that would otherwise be classified as hospital-based. Hospital-based nursing homes that are not operated by nursing home companies do not file an RHCF-4; rather, financial information regarding nursing home operations for those facilities is included among the data presented on the ICR filed annually by the hospital that sponsors the hospital-based nursing home. Thus, there are hospital-based nursing homes which provide financial data by filing an RHCF-4 — those formed and operating under article 28-A — and others which provide financial information only through the ICR filed by the hospital by which they are operated.
The completed RHCF-4 form reveals data specific to only a nursing home’s operations. It contains entries for operating revenue and operating expenses which may be directly utilized to calculate — in a matter of minutes — the nursing home’s operating margin for the purpose of determining eligibility to receive a rate adjustment as a financially disadvantaged facility. By contrast, the ICR form reports financial data for all activities conducted by a hospital, including, where applicable, those of a nursing home operated by the hospital. It does not contain entries directly reporting a nursing home’s separate operating revenue and operating expenses. Accordingly, it is possible to calculate an operating margin specific to a hospital-based nursing home only to the extent that it is possible to glean reliable data specific to nursing home operations from an ICR that would first allow a determination of a nursing home’s operating *781 revenue and operating expenses. The statute further provides that “[]flor hospital-based residential health care facilities for which an operating margin cannot be calculated on the basis of the submitted cost reports, the sponsoring hospital’s overall three-year operating margin, as reported in the institutional cost report, shall be utilized for this purpose” (Public Health Law § 2808 [21] [c] [emphasis supplied]).
CRMC operates a 181-bed acute care hospital and an 82-bed hospital-based nursing home. It files an ICR, but not a separate RHCF-4 for its nursing home. DOH has determined that it is not possible to calculate an operating margin for any hospital-based nursing home that files only an ICR. In accordance with that policy, and based on CRMC’s overall operating margins, DOH found that the nursing home operated by CRMC was not eligible for a rate adjustment as a financially disadvantaged facility. CRMC commenced this action, contending that the ICR contains sufficiently detailed financial information to permit calculation of a separate operating margin for its nursing home that placed it in the bottom quartile of nursing homes with negative margins in each of the years at issue.
It is appropriate to first consider whether this case should have commenced by action or article 78 proceeding. The claims raised in the first two causes of action asserted in the complaint — which are based on allegations that DOH improperly interpreted or applied Public Health Law § 2808 (21) when it determined that CRMC was ineligible for a rate adjustment— should have been raised in an article 78 proceeding (see New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194 [1994], rearg denied 84 NY2d 865 [1994]; see also Matter of New Franklin Ctr. for Rehabilitation & Nursing v Novello, 64 AD3d 1132 [2009], lv denied 13 NY3d 716 [2010] [challenge to DOH’s interpretation of a term defined in Public Health Law § 2808 (18) to deny additional funding to a nursing home was properly brought as an article 78 proceeding]). The claim stated in the third cause of action — that Public Health Law § 2808 (21) is facially unconstitutional (see complaint 1ÍH 58-60) — was properly brought as an action for declaratory judgment (see New York Pub. Interest Research Group v Steingut, 40 NY2d 250, 254 n 1 [1976] [declaratory judgment action is the appropriate vehicle for challenging the constitutionality of a statute]; cf. Dimiero v Livingston-Steuben-Wyoming County Bd. of Coop. Educ. Servs., 199 AD2d 875 [1993], lv denied 83 NY2d 756 [1994] [where the facial constitutionality of a statute is not at issue, a challenge *782 that it has been unconstitutionally applied is properly resolved in an article 78 proceeding]). Accordingly, as proposed by CRMC, the case is converted to a hybrid article 78 proceeding/ declaratory judgment action — the first two causes of action asserted in the complaint are converted to an article 78 proceeding, and the third cause of action shall remain a declaratory judgment action (see reply affirmation of Peter A. Lauricella, dated Sept. 9, 2010 [Lauricella reply affirmation], 1f 43).[2]
The issue in the article 78 proceeding involves a matter of statutory interpretation.
“Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld.” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980] [citations omitted]; see also Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Nous. & Community Renewal, 5 NY3d 303, 312 [2005], citing Kurcsics, Matter of Crucible Materials Corp. v New York Power Auth., 50 AD3d 1353, 1359 [2008], affd on other grounds 13 NY3d 223 [2009], citing Kurcsics [the issue resolved by affording the agency deference in interpreting the statute was not presented to the Court of Appeals].)
Here, the disputed statutory language — “[f]or hospital-based residential health care facilities for which an operating margin cannot be calculated on the basis of the submitted cost reports” — requires more than interpretation of a term or phrase used in the statute. It requires that DOH determine whether it is, in fact, possible to calculate an operating margin specific to CRMC’s nursing home from the data presented on CRMC’s ICR — a process which plainly requires knowledge and understanding of underlying operational practices of the facilities involved and evaluation of the factual data reported on an ICR (see e.g. Matter of New Franklin Ctr. for Rehabilitation & Nurs *783 ing v Novello, 64 AD3d at 1135 [DOH was entitled to a “high degree of judicial deference” in its interpretation of Public Health Law § 2808 (18) — a statute similar to Public Health Law § 2808 (21) in providing for rate adjustments to assist nursing homes — to deny funds to a nursing home which could not document that it had incurred any direct “salary and fringe benefit costs,” as defined by the statute]; Matter of Pinegrove Manor II, LLC v Daines, 72 AD3d 1096 [2010] [same], citing Matter of New Franklin Ctr.).
That significant expertise is required to interpret the statutory term at issue, by determining whether it is possible to calculate a nursing home’s specific operating margin from an ICR, is apparent from CRMC’s submissions. In support of its motion, CRMC provided affidavits from David Hardy, its senior vice-president for operations and chief financial officer for over 22 years, and John Milligan, a CPA with an accounting firm retained as a consultant by CRMC who formerly worked in hospital administration, which together set forth an extensive explanation of CRMC’s argument that it is possible to segregate a hospital-based nursing home’s operating revenues and operating expenses from the consolidated financial data reported on the ICR which may then be used to calculate an operating margin specific to the nursing home (see affidavit of David Hardy, sworn to May 28, 2010, 1iU 45-83; affidavit of John D. Milligan, sworn to May 31, 2010, lili 30-62).[3] Hardy then utilized the operating revenues and expenses that he segregated from the ICR filed by CRMC to calculate an operating margin specific to the nursing home for each of the years at issue. In his initial calculations, Hardy accounted for nonpatient operating revenues only as deductions to operating expenses; in other words, his original formula for determining the nursing home’s operating margin was patient revenues, minus net operating expenses, divided by patient revenues, with the result expressed as a percentage. As noted by DOH, this formula does not produce the same result as the formula mandated by the statute because it fails to include nonpatient operating revenues in the denomina *784 tor, which has the effect of understating a hospital-based nursing home’s operating margin. In reply, Hardy states his belief that his original formula is consistent with the format of the ICR and, therefore, is correct (see reply affidavit of David Hardy, sworn to Sept. 8, 2010, It 24). Nonetheless, he engages in an extensive explanation of how it is possible to calculate total operating revenue — including nonpatient revenue — to apply the formula as written in the statute (see id. Hit 14-40). His revised calculations confirm DOH’s observation that Hardy’s original proposed formula necessarily understates operating revenue, albeit, under the specific circumstances of this case, by a modest amount (see id. 1Í1Í 37-38). The effort required to explain CRMC’s proposed methodology, Hardy’s opinion that his original formula was correct, notwithstanding the fact that his subsequent calculations proved otherwise, and the fact that he and Milligan — both claiming extensive expertise in the area of preparing and understanding the relevant cost reports — originally erred in applying the statutory formula for determining an operating margin, illustrate that a significant degree of expertise is required to interpret the statute, thereby establishing that DOH’s interpretation is entitled to deference and must be upheld unless it is irrational or unreasonable.
In its response, DOH argues that, while it may be technically possible to extract information from an ICR that would permit calculation of an operating margin, the cost allocation procedure proposed by CRMC is not suitable for determining the operating margin of a hospital-based nursing home because it relies on assumptions to allocate operating revenues and expenses which may not accurately reflect the actual revenues and expenses for the nursing home. DOH notes the practical necessity of allocating costs commonly incurred by a hospital’s acute care facility and its nursing home in order to establish separate Medicaid reimbursement rates for each (see surreply affidavit of John W Gahan, Jr., sworn to Sept. 17, 2010 [Gahan surreply affidavit], 1i 9). DOH acknowledges that expenses are allocated between a hospital’s acute care facility and its nursing home on an ICR using the methodology that it mandates. However, it explains that any lack of precision in allocating such costs effectively nets out when Medicaid reimbursement rates are set — any overallocation or underallocation of costs to the nursing home is offset by a corresponding underallocation or overallocation of costs to the acute care facility (see id.). By contrast, a lack of precision in cost allocation will not be ac *785 counted for if the data is used only to calculate a nursing home’s separate operating margin to determine eligibility for a rate adjustment as a financially disadvantaged facility, because there will be no corresponding offset to the payment rates to the acute care unit.
DOH further contends that it would be inappropriate to use the data from an ICR for the purpose of attempting to calculate a hospital-based nursing home’s operating margin, because no adjustment would be made for known differences in the data reported by facilities filing an ICR and those filing an RHCF-4. For example, DOH states — without contradiction from CRMC— that hospital-based nursing homes typically report administrative and general (A & G) costs greater than those reported by freestanding nursing homes because of the allocation of hospital A & G costs to the nursing home, which may have its own administrative staff (see affidavit of John W Gahan, Jr., sworn to Aug. 11, 2010, lili 38-39). DOH explains that it attempts to account for such differences in financial reporting in its Medicaid rate-setting methodology. In the given example, hospital-based nursing homes are grouped separately from freestanding nursing homes when calculating indirect cost ceilings, providing a significant advantage to hospital-based nursing homes (id., citing 10 NYCRR 86-2.10 [d] [2] [ii]), and, in addition, hospital-based nursing homes receive higher Medicaid payments than freestanding nursing homes (id. 1Í 27).
DOH also correctly notes that the interpretation advanced by CRMC would violate a tenet of statutory construction by rendering the disputed phrase meaningless (see Matter of Brown v Wing, 93 NY2d 517, 523 [1999]). CRMC argues at length that it is possible to calculate an operating margin for a hospital-based nursing home from an ICR. It further contends that DOH has an affirmative obligation to ask any follow-up questions that may be necessary to clarify the information presented on the ICR or to obtain any additional information which may be necessary to complete that calculation. Under such circumstances — as ultimately conceded by CRMC’s counsel at oral argument — it would always be possible to calculate a hospital-based nursing home’s operating margin by direct reference to the submitted cost reports, rendering the phrase “[flor hospital-based residential health care facilities for which an operating margin cannot be calculated on the basis of the submitted cost reports” meaningless. By contrast, the interpretation adopted by DOH, which distinguishes between article 28-A hospital- *786 based nursing homes — for which it is possible to calculate an operating margin directly from the RHCF-4 reports — and all other hospital-based nursing homes — for which DOH has determined that “an operating margin cannot be calculated on the basis of the [ICRs]” — gives meaning to all terms of the statute.
In light of the foregoing, DOH’s consistent interpretation and application of Public Health Law § 2808 (21) cannot be said to be irrational or unreasonable; therefore, it must be upheld.
In the declaratory judgment action, CRMC alleges that Public Health Law § 2808 (21) violates the Equal Protection Clauses of the United States and New York State Constitutions.[4] Two well-established principles govern review of the claim that the statute is unconstitutional on its face. First, the statute “enjoys a strong presumption of constitutionality, which [CRMC] must overcome beyond a reasonable doubt” (Port Jefferson Health Care Facility v Wing, 94 NY2d 284, 289 [1999], cert denied 530 US 1276 [2000] [citation omitted]). Second, the statute is “subject to the lowest level of judicial review, whether any rational basis supports the legislative choices” (id. [citations omitted]). Under the rational basis standard of review, “classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification” (id. at 290 [internal quotation marks omitted]).
Here, as noted above, DOH has articulated several reasons for treating hospital-based nursing homes differently than freestanding nursing homes, namely, the differences in the content of their financial reports, the procedure involved with allocating costs between a hospital’s acute care facility and its nursing home, and the level of Medicaid payments made to each.[5] Similarly, it has provided reasons why hospital-based nursing homes and article 28-A nursing homes that are hospital-based may legitimately be treated differently. For example, it notes *787 that the Legislature may have intended to provide more assistance to article 28-A nursing homes to assure payment of bonds issued by public authorities to finance construction of such facilities (see Gahan surreply affidavit 1f 16). Such reasons are sufficiently rational to prevent CRMC from overcoming the strong presumption that Public Health Law § 2808 (21) is constitutional (see also Matter of Waterview Hills Nursing Ctr. v Axelrod, 170 AD2d 785, 786 [1991] [where two types of health care facilities are different in character and have historically been regulated differently, there is a rational basis for treating them differently]).[6]
Based on the foregoing, CRMC’s motion is denied, defendants’ cross motion seeking dismissal is granted, and the petition and the complaint are dismissed.

. There are additional restrictions to eligibility that are not relevant to resolution of this dispute, i.e., nursing homes that have either a positive operating margin, or an average Medicaid utilization percentage of 50% or less, in the most recent year of the three-year period are disqualified from receiving funds (see Public Health Law § 2808 [21] [c]). For rate periods beginning on or after April 1, 2009, the fund will be distributed only to nursing *780 homes with negative operating margins in the bottom two quartiles — rather than the bottom three quartiles — subject to disqualification only on the basis of having had an average Medicaid utilization percentage of less than 70% in the most recent year of the three-year period (id.).

. Inasmuch as DOH withdrew its statute of limitations defense by letter of counsel dated July 3, 2008, there is no issue regarding whether an article 78 proceeding challenging DOH’s denial of a rate adjustment to CRMC would have been timely when this action was originally commenced (see Lauricella reply affirmation HH 45-49).

. Briefly, they explain that the nursing home’s net patient service revenue is easily obtained from exhibit 46 of the ICR and that other operating revenues are allocated to nursing homes as deductions to its share of operating expenses. Other operating revenues and operating expenses are allocated to the nursing home based on a formula prescribed by DOH for completing the ICR. The net operating expenses allocated to a nursing home are then reported on numerous schedules to the ICR, in a manner that allows them to be separately identified.

. In its brief, CRMC attempts to argue, for the first time, that the statute also violates its substantive and procedural due process rights. Inasmuch as such claims were not pleaded in the complaint, they have not been considered.

. DOH refuted CRMC’s claim that hospital-based nursing homes have greater burdens than freestanding nursing homes — because their patient populations include a higher proportion of seriously disabled individuals directly discharged from the sponsoring hospital — by explaining that nursing home reimbursement methodology bases payments on the level of care actually needed by a nursing home’s residents (see Gahan surreply affidavit ft 11-12).

. Its claim that the statute has been applied in an unconstitutional manner has been considered and rejected.