OPINION OF THE COURT
Lawrence H. Ecker, J.
It is ordered that the petition pursuant to CPLR article 78 seeking an order directing the New York State Board of Parole (Board) to hold a de novo parole release hearing is disposed of as follows:
Petitioner Demitrious Stanley (petitioner) is a 31-year-old inmate who has served 16 years on a sentence of nine years to life imprisonment for murder in the second degree imposed as a juvenile offender. He moves for a judgment pursuant to CPLR article 78 seeking to annul the October 14, 2009 decision of respondent New York State Board of Parole denying him parole for the fifth time and remitting the matter for a de novo hearing.
Facts
On February 28, 1995, petitioner, age 15, and John Cruz, age 16, went to the home of Lamans Fields, age 15, and a short time later, petitioner shot and killed Fields outside the victim’s apartment at 60 East 135th Street in Manhattan. On May 30, 1996, following his conviction after a jury trial in Manhattan Supreme Court, petitioner, then 16, was sentenced as a juvenile offender to an indeterminate term of nine years to life imprisonment.
Petitioner became eligible for parole in February 2004. He has appeared five times before the Board of Parole as follows:
December 2003 — initial appearance — held 24 months.
December 2005 — held 24 months.
December 2006 — special consideration de novo appearance— held 24 months.
December 2007 — held 24 months.
October 2009 — held 24 months.
At the October 2009 parole hearing under review, the Board primarily questioned petitioner about the crime. Petitioner admitted to the crime, that he had been selling drugs, and that the murder was drug-related. At the time, he had been serving a one-year term of probation as a juvenile on a charge of petit larceny. The Board then questioned him about his release plans to live with his elderly grandmother and to assist his aunt. *913 They concluded the interview by questioning him about his prison disciplinary record, specifically “a recent Tier II for unauthorized exchange, contraband.” In fact, the October 2009 Reappearance Parole Report indicated petitioner had not had any recent disciplinary infractions since his last Board appearance: “No tickets since 1/07.” (Respondent’s answer and return, exhibit 3, at 2.)
The Board’s decision denying parole states:
“This panel has concluded that your release to supervision is not compatible with the welfare of society and therefore, parole is denied. This finding is made following a personal interview, record review and deliberation.
“Of significant concern is the violence you displayed during your instant offense, where you shot a known male causing death and resulting in a juvenile offender murder 2nd adjudication.
“Positive factors considered include your community support document submissions and program accomplishments.
“In addition, your instant offense followed a previous probation sentence. This escalation of unlawful activity is noted.
“To grant your release at this time would so deprecate the seriousness of your offense as to undermine respect for the law.
“You have received multiple disciplinary violations during this term including a recent Tier II report.
“The probability you will live and remain at liberty without violating the law is not found to be reasonable, given the factors noted above.”
Petitioner took an administrative appeal from the Board’s decision. On September 17, 2010, the Board of Parole affirmed its decision denying parole.
Argument
Petitioner
In the instant article 78 proceeding, Stanley contends that by repeatedly denying parole, the Parole Board has effectively converted his juvenile sentence into an adult sentence. Secondly, he argues that the Parole Board’s decision denying parole is an abuse of discretion, arbitrary and capricious, and irrational bordering on impropriety where the Board has held him far be *914 yond his minimum term based almost entirely on the nature of the crime, especially where there is a presumption in favor of release for parole reappearances. As to this latter point, he relies on Rules of the Division of Parole (9 NYCRR) § 8002.3 (b) which states that at a reappearance hearing,
“[r]elease shall be granted unless one or more of the following is unsatisfactory:
“(1) the institutional record, including program goals and accomplishments, academic achievements, vocational education training or work assignments, therapy and interpersonal relationships with staff and inmates;
“(2) performance, if any, as a participant in a temporary release program; or
“(3) release plans, including community resources, employment, education and training and support services available to the inmate.”
Respondent
In its answer and return, the respondent argues the petition should be dismissed as lacking in merit because: (1) the Parole Board must consider criteria which are relevant to the specific inmate, including, but not limited to, the inmate’s institutional record or criminal behavior, giving whatever emphasis they choose to each factor; (2) the Board is not required to give equal weight to each statutory factor; (3) an inmate with positive institutional achievements is not automatically entitled to parole release; (4) parole release shall not be granted merely as a reward for good conduct or achievements while incarcerated; (5) a determination that the inmate’s achievements are outweighed by the severity of the crime is within the Board’s discretion, and does not demonstrate a showing of irrationality bordering on impropriety; (6) the consideration of prison disciplinary violations is also appropriate; (7) the claim that the denial of parole amounted to a resentencing is without merit; (8) New York’s parole scheme does not create a legitimate expectancy of release; (9) the Board’s reasons denying parole were sufficiently detailed and a proper exercise of its proper discretion; and (10) actions by the Parole Board are a judicial function and are not reviewable when made in accordance with law.
Discussion
It is well settled that parole release is a discretionary function of the Parole Board and its determination should not be *915 disturbed by the court unless it is shown that the Board’s decision is irrational “bordering on impropriety” and that the determination was, thus, arbitrary and capricious. (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000]; Matter of King v New York State Div. of Parole, 190 AD2d 423 [1st Dept 1993], affd 83 NY2d 788 [1994]; Matter of Rios v New York State Div. of Parole, 15 Misc 3d 1107[A], 2007 NY Slip Op 50529[U] [Sup Ct, Kings County 2007].) In reviewing the Board’s decision, the court must also examine whether the Board’s discretion was properly exercised in accordance with the parole statute, Executive Law § 259-i (2) (c) (A), which provides:
“Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for the law.”
The statute provides the Board with the following specific factors to be considered in determining whether the above general criteria have been met:
“(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government . . . (v) any statement made to the board by the crime victim or the victim’s representative, where the crime victim is deceased or is mentally or physically incapacitated; and (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law.” (Executive Law § 259-i [2] [c] [A].)
Executive Law § 259-c (4) mandates the Board of Parole to establish written guidelines to use in making parole decisions, *916 “including the fixing of minimum periods of imprisonment or ranges thereof for different categories of offenders.” Such written guidelines may consider the use of a risk and needs assessment instrument to assist members of the Board of Parole in determining which inmates may be released to parole supervision. The guidelines are based solely on the severity of the inmate’s crime and his past criminal history and “represent the policy of the board concerning the customary total time served before release for each category of offense.” (9 NYCRR 8001.3 [a], [b] [1].) They are subject to limitations imposed by law, including any court-imposed minimum that must be served before parole release may be granted. (9 NYCRR 8001.3 [b] [2].)
Since petitioner was sentenced as a juvenile offender, he was subject to juvenile offender parole release decision-making guidelines which were required to be applied in his case. (See Division of Parole, Policy and Procedures Manual Item 8135.00 [A] [1] [a] [“Staff will use juvenile offender guidelines as outlined in the Juvenile Offender Guideline Manual at the time of the (juvenile offender’s) Parole Board appearance. Juvenile offender guidelines will be applied to any inmate sentenced as a juvenile offender regardless of whether or not the inmate is in an OCFS (Office of Children and Family Services) or a DOCS (Department of Correctional Services) facility at the time the Inmate Status Report is being prepared”].)
In petitioner’s case, the inmate status report for petitioner’s parole appearance established the guideline range at 36 to 60 months. (Respondent’s answer and return, exhibit 3, at 1.) However, his nine-year minimum term (108 months) precluded release prior to service of the full minimum term. When petitioner appeared for the fifth time before the Parole Board, in October 2009, he had served 176 months.
9 NYCRR 8001.3 (c) states:
“(c) Decisions outside the guidelines. The time ranges indicated above are merely guidelines. Mitigating or aggravating factors may result in decisions above or below the guidelines. In any case where the decision rendered is outside the guidelines, the detailed reason for such decision, including the fact or factors relied on, shall be provided to the inmate in writing.”
At the parole hearing and in its subsequent written decision, the Board makes no reference to its juvenile offender guidelines.
While the court recognizes that it is not necessary for the Parole Board, in its decision, to specifically refer to each and every *917 one of the statutory factors it considered in granting or denying parole release or to give equal weight to each factor (Matter of Gelsomino v New York State Bd. of Parole, 82 AD3d 1097 [2d Dept 2011]; Matter of Huntley v Evans, 77 AD3d 945 [2d Dept 2010]; Matter of Miller v New York State Div. of Parole, 72 AD3d 690, 691 [2d Dept 2010]; Matter of Mitchell v New York State Div. of Parole, 58 AD3d 742 [2d Dept 2009]), it is equally clear the Board must give fair consideration to each of the applicable statutory factors. When it focuses, as here, almost entirely on the nature of petitioner’s crime, there is a strong indication that the denial of parole is a “foregone conclusion” and does not comport with the statutory scheme. (Matter of King, 190 AD2d at 432.)
Respondent cites Matter of Evans v Dennison (13 Misc 3d 1236[A], 2006 NY Slip Op 52144[U] [Sup Ct, Westchester County 2006]) as “strikingly similar” to the instant case. There, a juvenile offender sentenced to a similar sentence of nine years to life imprisonment for murder in the second degree was denied parole on his second parole release appearance. Here, petitioner has been denied parole five times based upon reasons that focus primarily on the serious nature of the crime. This leads the court to view the respondent’s action as, in effect, resentencing petitioner to a far greater sentence than imposed by the sentencing court. As stated in Matter of Rios v New York State Div. of Parole (15 Misc 3d 1107[A], 2007 NY Slip Op 50529[U], *5 [2007], supra, quoting Matter of King, 190 AD2d at 433):
“This court, of course, does not mean to minimize the seriousness of petitioner’s offense, nor the tragedy of the death of petitioner’s victims, however in affording the possibility of parole to those convicted of murder, the legislature has made a determination that, despite the seriousness of that crime, rehabilitation is possible and desirable . . .
“Certainly every murder conviction is inherently a matter of the utmost seriousness since it reflects the unjustifiable taking and tragic loss of a human life. Since, however, the Legislature has determined that a murder conviction per se should not preclude parole, there must be a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself’ (internal quotation marks omitted).
The court finds the Board’s decision denying parole in this case to be arbitrary and capricious based upon: (1) the failure to *918 consider or make reference to its own juvenile offender parole release decision-making guidelines at the parole hearing or in its written decision; (2) the failure to provide a “detailed reason” for its decision outside the juvenile offender guidelines (9 NYCRR 8001.3 [c]); (3) a mistaken reference at the parole hearing and in its decision to a “recent Tier II report” that, in fact, had predated the petitioner’s prior parole appearance; (4) the continual primary focus on the nature of the crime after petitioner had been denied parole four prior times for substantially the same reason; and (5) the conclusory statement in the decision that “[t]he probability you will live and remain at liberty without violating the law is not found to be reasonable, given the factors above.”
For all of these reasons, the Board’s decision was not made in accordance with the requirements of the statutory guidelines set forth in Executive Law § 259-i (2) (c) (A) and is irrational bordering on impropriety. (Matter of Weinstein v Dennison, 7 Misc 3d 1009[A], 2005 NY Slip Op 50518[U] [Sup Ct, Kings County 2005].)
Accordingly, the court grants the petition, annuls the Board of Parole’s decision of October 14, 2009 denying parole release to petitioner, and remands to the Board of Parole which, within 30 days of the service of a copy of this order with notice of entry, shall hold a new hearing consistent with this decision and the mandates of Executive Law § 259-i and 9 NYCRR 8001.3.