OPINION OF THE COURT
Lawrence H. Ecker, J.
Petitioner Douglas Thwaites (petitioner) seeks an order and judgment pursuant to CPLR article 78 seeking the following relief: (1) annulling and vacating the March 16, 2010 determination of respondent New York State Board of Parole denying him parole; and (2) granting a new parole hearing. Respondent opposes the petition and seeks its dismissal.
Petitioner was convicted by a jury of murder in the second degree and assault in the second degree on April 15, 1986 in Supreme Court, Kings County. He was sentenced to indeterminate terms of 25 years to life imprisonment and 21/s to 7 years to run concurrently. Now 67 years old, he has served over 26 years of his sentence. When he is released, he is subject to an order of deportation issued on September 3, 1998, for removal to Trinidad and Tobago.
Facts
On July 28, 1985, petitioner killed his estranged wife by fatally stabbing her as she started to get into a car parked in front of 792 Park Place in Brooklyn. Edley John, a family friend, was also at the car. The petitioner grabbed his wife and John sought to intervene. Petitioner stabbed John twice in the left arm. He then stabbed his wife nine times.
After serving 25 years, petitioner became eligible for parole in July 2010. He appeared before the Board of Parole on March 16, *696 2010. At this initial parole hearing, the Board primarily questioned petitioner about his crimes and past criminal history, as well as the deportation order to Trinidad and Tobago. Petitioner admitted to the crime and expressed his remorse. (Respondent’s answer and return, exhibit 3.)
Petitioner was denied parole and held for 24 months to March 2012.
The Board’s decision stated:
“After a careful review of your record, a personal interview and deliberation, parole is denied. Your institutional accomplishments and release plans are noted, as is your improved disciplinary record. This panel remains concerned, however, about your history of unlawful conduct, the gracity [sic] of your instant offense and the disregard displayed for the norms of our society which, when considered with required and relevant factors, leads to the conclusion that your discretionary release is inappropriate at this time and incompatible with the welfare of the community. To hold otherwise would so deprecate the seriousness of your crime as to undermine respect for the law.”
Petitioner took an administrative appeal from the Board’s decision. On or about February 17, 2011, the Board of Parole affirmed its decision denying parole.
Argument
Petitioner
In the instant article 78 proceeding, petitioner contends the Parole Board’s decision to deny parole: (1) was arbitrary and capricious; (2) was a denial of due process in failing to offer any guidance or additional reasons other than severity of the offense; (3) failed to consider the sentence minutes; (4) failed to follow the proper guidelines for release decisions; (5) failed to apply the procedures established for parole release for deportation only; and (6) was an abuse of discretion in focusing exclusively on the instant offense.
Respondent
In its answer and return, the respondent argues the petition should be dismissed as lacking in merit because: (1) the Parole Board must consider criteria which is relevant to the specific inmate, including, but not limited to, the inmate’s institutional record or criminal behavior, giving whatever emphasis it chooses to each factor; (2) the Board is not required to give equal weight *697 to each statutory factor; (3) an inmate with positive institutional achievements is not automatically entitled to parole release; (4) parole release shall not be granted merely as a reward for good conduct or achievements while incarcerated; (5) a determination that the inmate’s achievements are outweighed by the severity of the crime is within the Board’s discretion, and does not demonstrate a showing of irrationality bordering on impropriety; (6) the consideration of prison disciplinary violations is also appropriate; (7) the claim that the denial of parole amounted to á resentencing is without merit; (8) the fact the Parole Board neither had nor considered the sentencing minutes was harmless error because the sentencing minutes, which were subsequently obtained and reviewed on the administrative appeal (respondent’s answer and return, exhibit 10), do not contain any recommendation in favor of or in opposition to petitioner’s parole release, and, therefore, do not provide a basis for setting aside the decision; (9) the Board’s reasons denying parole were sufficiently detailed and a proper exercise of its proper discretion; and (10) the Board is not required to advise the petitioner as to the programs he should take or rehabilitative efforts he should engage in to help ensure his release in the future.
Discussion
The Parole Board’s failure to obtain and consider the petitioner’s sentencing minutes at the parole hearing is not grounds to set aside the Board’s determination since the minutes did not contain any recommendation as to parole. (Matter of Duffy v New York State Div. of Parole, 74 AD3d 965 [2d Dept 2010].)
Turning to the Board’s decision, it is well settled that parole release is a discretionary function of the Parole Board and its determination should not be disturbed by the court unless it is shown that the Board’s decision is irrational “bordering on impropriety” and that the determination was, thus, arbitrary and capricious. (Matter of Silmon v Travis, 95 NY2d 470 [2000]; Matter of King v New York State Div. of Parole, 190 AD2d 423 [1st Dept 1993], affd 83 NY2d 788 [1994]; Matter of Duffy v New York State Div. of Parole, 74 AD3d 965 [2010]; Matter of Rios v New York State Div. of Parole, 15 Misc 3d 1107[A], 2007 NY Slip Op 50529[U] [Sup Ct, Kings County 2007].) In reviewing the Board’s decision, the court must also examine whether the Board’s discretion was properly exercised in accordance with the parole statute. Executive Law § 259-i (2) (c) provides:
*698 “(A) Discretionary release on parole shall, not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.”
The statute provides the Board with the following specific factors to be considered in determining whether the above general criteria has been met:
“(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government . . . ; (v) [the written statement of the] crime victim or the victim’s representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the presentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.” (Executive Law § 259-i [2] [c] [A], as amended by L 2011, ch 62 [repealing section 259-i (1) and adding factors (vii) and (viii) to section 259-i (2) .(c), to consolidate all factors governing release decisions into a single section of the parole statute; *699 previously, factors (vii) and (viii) (seriousness of the offense and prior criminal history) were separately set forth in section 259-i (1) which is now repealed].)
Of greater significance, Executive Law § 259-c (4) was recently amended to require the Board to promulgate new procedures in making parole release decisions. Such new procedures to be adopted “shall incorporate risk and needs principles to measure the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assist members of the state board of parole in determining which inmates may be released to parole supervision.” (See L 2011, ch 62, part C, subpart A, § 38-b.)
The amendments to the parole statutes are remedial in nature and designed to modernize decision-making in the area of parole release. As one commentator noted:
“The 2011 amendments . . . modernize the work of the Parole Board by requiring the board to adopt procedures that incorporate a growing body of social science research about assessing post-release needs and recidivism risks. . . .
“[T]he most important change is the replacement of static, past-focused ‘guidelines’ with more dynamic present and future-focused risk-assessment ‘procedures’ to guide the Parole Board . . .
“This addition of an explicit requirement that the Parole Board adopt and be guided by procedures that require it to evaluate ‘rehabilitation’ and the ‘likelihood of success . . . upon release’ signals a critical reform and modernization of parole practices. Such procedures . . . will rationalize parole decision-making by placing the focus primarily on who the person appearing before the Parole Board is today and on whether that person can succeed in the community after release, rather than — as under the previous ‘guidelines’ — on who the person was many years earlier when she or he committed the crime. This is a shift in policy of potentially sweeping significance.” (Professor Phillip M. Genty, Columbia Law School, Changes to Parole Laws Signal Potentially Sweeping Policy Shift, NYLJ, Sept. 1, 2011.)
The issue before the court in this case is whether the 2011 amendments to the Executive Law, as set forth above, shall apply to the instant article 78 proceeding. The amendment *700 to Executive Law § 259-i (2) (c) became effective on March 31, 2011, and the amendment to Executive Law § 259-c (4) became effective on November 1, 2011. The court concludes the remedial amendments should apply in this pending proceeding, and petitioner is thereby entitled to a new parole hearing consistent with the new risk assessment procedures.
It is axiomatic that remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose. (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577 [1998]; Becker v Huss Co., 43 NY2d 527, 540 [1978]; see also People ex rel. Forshey v John, 75 AD3d 1100 [4th Dept 2010]; Aguaiza v Vantage Props., LLC, 69 AD3d 422 [1st Dept 2010].) Remedial statutes have been regarded as an exception to any general rule against retroactivity. (McKinney’s Cons Laws of NY, Book 1, Statutes § 54.)
Here, the Parole Board relied almost entirely on the nature of petitioner’s crime in denying parole. While his institutional accomplishments and release plans were noted, the Board focused on the circumstances of the crime committed 25 years ago. When the Board reasoned that petitioner’s discretionary release was inappropriate and incompatible with the welfare of the community so as to deprecate the seriousness of the crime as to undermine the respect for the law, it was employing past-focused rhetoric, not future-focused risk assessment analysis. Such reasons fail to sustain a rational determination on the inquiry at hand: whether there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not deprecate the seriousness of his crime as to undermine respect for the law. (Executive Law § 259-i [2] [c].)
In Matter of King v New York State Div. of Parole (190 AD2d at 432), the court, in finding the Parole Board’s determination fundamentally flawed, stated, “The role of the Parole Board is not to resentence petitioner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether, as of this moment, given all of the relevant statutory factors, he should be released.” (Emphasis added.)
Similarly, in Matter of Rios v New York State Div. of Parole (15 Misc 3d 1107[A], 2007 NY Slip Op 50529[U], *5 [2007]), the court stated:
*701 “This court, of course, does not mean to minimize the seriousness of petitioner’s offense, nor the tragedy of the death of petitioner’s victims, however in affording the possibility of parole to those convicted of murder, the [L]egislature has made a determination that, despite the seriousness of that crime, rehabilitation is possible and desirable . . .
“Certainly every murder conviction is inherently a matter of the utmost seriousness since it reflects the unjustifiable taking and tragic loss of a human life. Since, however, the Legislature has determined that a murder conviction per se should not preclude parole, there must be a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself’ (internal quotation marks omitted, quoting Matter of King, 190 AD2d at 433).
The court finds the Board’s decision denying parole in this case to be arbitrary and capricious, irrational, and improper based upon the Parole Board’s failure to articulate any rational, nonconclusory basis, other than its reliance on the seriousness of the crime, why the Board could not believe “there is a reasonable probability that, if [petitioner] is released, he would live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.” (Executive Law § 259-i [2] [c] [A].) It is undisputed on this record the Board’s decision was not made in accordance with the 2011 amendments to the Executive Law which requires a new parole hearing utilizing risk assessment principles and procedures.
The Parole Board’s determination also failed to indicate whether consideration was given to whether release to the deportation order with mandatory removal was appropriate under the circumstances of this case. Such consideration is required by the parole statute. (Executive Law § 259-i [2] [c] LA].)
Accordingly, the court grants the petition, annuls the Board of Parole’s determination of March 16, 2010, vacates the denial of parole release to petitioner, and remands to the Board of Parole which, within 30 days of the service of a copy of this order with notice of entry, shall hold a new parole hearing consistent with this decision and the mandates of Executive Law §§ 259-c *702 and 259-i (as amended by L 2011, ch 62). The new hearing shall be held before a different panel of the Parole Board.