OPINION OF THE COURT
Richard M. Platkin, J.
Samuel Hamilton is an inmate at the Fishkill Correctional Facility serving concurrent indeterminate terms of imprisonment of 18 years to life for murder in the second degree and 9 to 18 years for robbery in the first degree. He brings this CPLR article 78 proceeding challenging respondents’ determination of November 9, 2010, which denied him release to parole and ordered him held for reappearance in 24 months.[1]
The verified petition raises five principal claims: (1) the Parole Board’s decision was based only on the serious nature of petitioner’s crimes of conviction and failed to give adequate consideration to other statutory factors; (2) the decision of the Parole Board was conclusory, arbitrary and capricious; (3) the challenged determination constitutes a de facto resentencing of petitioner; (4) the Parole Board’s decision was based upon inaccurate information concerning petitioner’s role in his crimes of conviction; and (5) Commissioner Smith erred by not recusing *442 himself. In addition, on January 11, 2012, during the pendency of this application, petitioner’s counsel wrote to draw the court’s attention to Matter of Thwaites v New York State Bd. of Parole (34 Misc 3d 694 [Sup Ct, Orange County 2011]), which gave retroactive effect to the 2011 amendments to Executive Law § 259-i (2) (c) and § 259-c (4) (the 2011 Amendments).
The court begins with petitioner’s contention that the 2011 Amendments apply to this proceeding and entitle him to a new administrative hearing. In 2011, Executive Law § 259-c (4) was amended to require the Board to
“establish written procedures for its use in making parole decisions as required by law. Such written procedures shall incorporate risk and needs principles to measure the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assist members of the state board of parole in determining which inmates may be released to parole supervision.”
In addition, Executive Law § 259-i (2) (c) was amended to consolidate into one section the complete list of factors that the Parole Board is required to consider in evaluating applications for discretionary parole.
In Matter of Thwaites (supra), Supreme Court, Orange County applied the 2011 Amendments to a March 16, 2010 determination of the Parole Board. Relying principally upon the remedial nature of the amendments, the Thwaites court concluded that the petitioner therein was entitled to a new hearing conducted in conformance with the 2011 Amendments.
In adopting the 2011 Amendments, the State Legislature provided that the amendments to Executive Law § 259-i (2) (c) “shall take effect immediately” upon becoming law, which occurred on March 31, 2011. Similarly, the Legislature declared that “the amendments to subdivision 4 of section 259-c of the executive law made by . . . this act shall take effect six months after [March 31, 2011]” (L 2011, ch 62, part C, subpart A, § 49 [f]). Here, respondents’ determination of November 9, 2010 predated the stated effective date of both amendments, and respondents’ appeal determination of July 26, 2011 predated the stated effective date of the amendments to Executive Law § 259-c (4).
“It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by *443 necessary implication requires it” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]). And while it is true that “remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose” (Matter of Gleason [Michael Vee, Ltd..], 96 NY2d 117, 122 [2001]), “explicit legislation setting forth a prospective effective date ‘is sufficient to overcome any presumption of retroactivity’ ” (People v Walker, 26 AD3d 676, 677 [3d Dept 2006]).
It is apparent from the foregoing that the State Legislature considered the question of the effectiveness of the 2011 Amendments and determined that the new procedures contemplated by the amendments to Executive Law § 259-c (4) should not be given effect with respect to administrative proceedings conducted prior to October 1, 2011. Here, the challenged determination was rendered and petitioner’s administrative appeal was denied by such date. Moreover, petitioner offers no logical basis for concluding that the State Legislature intended for courts to review determinations of the Board of Parole rendered prior to October 1, 2011 under the new procedures imposed by the 2011 Amendments. Indeed, under petitioner’s construction of the amendments made to Executive Law § 259-c (4), every determination of the Board of Parole rendered prior to October 1, 2011 is invalid.[2] Under the circumstances, the court does not believe that the State Legislature intended Executive Law § 259-c (4) to be given retroactive application in the manner advocated for by petitioner. To the extent that Supreme Court, Orange County or other trial courts have reached contrary conclusions, the undersigned respectfully disagrees.
In denying parole, the Board recited, in pertinent part:
“Following a review of your record and all reports in your folder including the details of the interview, this panel denies release at this time. The details of this crime are tragic. Armed with a gun you and your co-defendants searched for vulnerable victims to rob. During the interview you talked about how you targeted two separate women, successfully robbing one of them. You then saw and chose a solo male victim who you and one of your co-defendants followed .... Records indicate that you demanded *444 money, at which time this off-duty housing police officer drew his weapon. The victim was fatally shot but not before returning fire and striking you. Your version of the incident is that you did not do the shooting. This panel makes note of your incredible prison record of good conduct, program achievements and other accomplishments. The panel also makes note of your many letters of support from family, staff, support groups and the community. Parole should not be granted for good conduct and program completions alone, but after considering if there is a reasonable probability that if such inmate is released he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society. The magnitude of this violent act, the shooting down of an individual on a public street and the taking of a life of a police officer, make release at this time unwarranted.”
Executive Law § 259-i (2) (c) sets forth the factors that the Parole Board must consider in evaluating discretionary parole requests (see Matter of Wan Zhang v Travis, 10 AD3d 828, 829 [3d Dept 2004]). These factors include the seriousness of the offense, the inmate’s institutional record, his prior criminal record and plans upon release (see Executive Law § 259-i [former (1) (a)]; [2] [c]; see Matter of Cox v New York State Div. of Parole, 11 AD3d 766, 767 [2004], lv denied 4 NY3d 703 [2005]). Where, as here, “a court has fixed the minimum period of imprisonment, the Board is required to give due consideration to the presentence report” (Matter of Cox, 11 AD3d at 767; see Executive Law § 259-i [former (1) (a)]). “[J]udicial intervention in a parole determination ‘is warranted only when there is a “showing of irrationality bordering on impropriety” ’ ” (Matter of Cox, 11 AD3d at 767, quoting Matter of Silmon v Travis, 95 NY2d 470, 476 [2000]).
The record establishes that the Parole Board considered the required statutory factors in rendering the challenged determination and that said determination was sufficiently detailed to inform petitioner of the reasons for the denial of discretionary parole. Thus, the Board had before it petitioner’s institutional record, presentence investigative report and sentencing minutes, which detail petitioner’s institutional adjustment, programming, disciplinary record, proposed release plans, criminal history and facts concerning the instant often *445 ses. Further, the Parole Board was aware of the petitioner’s many institutional accomplishments, the letters of support submitted on his behalf and his plans upon release. In addition, petitioner was given an opportunity to address the Board with his concerns regarding the parole interview process, media attention and the composition of the panel. Indeed, at one point during the interview, petitioner was asked if there was anything further he wanted to say, and he responded with a lengthy discussion of his attitudes regarding the instant offenses and the victim’s family members. Under the circumstances, petitioner has failed to demonstrate that respondents failed to consider the required factors or failed to provide him with a sufficiently detailed explanation for the denial of parole.
Indeed, petitioner does not seriously dispute that the Parole Board considered the required statutory factors to some extent; rather, his principal contention appears to be that the Parole Board gave excessive weight to the seriousness of his crimes of conviction and insufficient weight to the other required factors.[3] However, the Parole Board “is not required to give equal weight to each statutory factor” (Matter of Wan Zhang, 10 AD3d at 829; Matter of Collado v New York State Div. of Parole, 287 AD2d 921 [3d Dept 2001]). Thus, while petitioner has attained an impressive record of institutional accomplishments and managed to keep a clean disciplinary record during his lengthy period of incarceration, the Parole Board has the discretion to weigh these factors against the gravity of his crimes of conviction (see Executive Law § 259-i [former (1)], [2]). “Discretionary release on parole shall not be granted merely as a reward for good conduct” (id. at [2] [c]).
The instant offenses arose out of petitioner’s participation in a robbery spree in which he and accomplices sought out vulnerable victims. During one such robbery, an off-duty police officer was shot and killed. Clearly, the nature of petitioner’s murder and robbery offenses bears on “whether his release is compatible with the welfare of society” (Matter of Richards v Travis, 288 AD2d 604, 605 [3d Dept 2001]). And contrary to petitioner’s contention, the fact that the Parole Board exercised its discretion to accord greater weight and emphasis to the gravity of the instant offenses and the compatibility of petitioner’s release *446 with the welfare of society does not establish that the Board failed to give due consideration to all of the other required factors.
Further, petitioner has failed to demonstrate that the Parole Board relied upon inaccurate information. In making this argument, petitioner complains that the Parole Board believed that he was armed with a gun on the night of the robbery/murder and further takes issue with the Board referring to petitioner’s “version” of events on the night in question. However, upon review of the hearing transcript, it is not specified that petitioner was armed with a gun; rather, the referenced discussion concerns petitioner’s involvement in the gunpoint robberies of vulnerable victims. There is no record basis for concluding that the Parole Board believed that petitioner was the shooter or that any such misapprehension played any part in the challenged determination. Indeed, Board members directly questioned petitioner on this very issue, and petitioner clearly articulated that he was not armed with a gun. Viewed in the context of the overall administrative record, the isolated language relied upon by petitioner falls short of demonstrating that the Board’s determination should be annulled based upon misapprehensions of fact.
Petitioner also argues that the Board’s decision amounts to an unauthorized resentencing. This argument is without merit (see Matter of Marsh v New York State Div. of Parole, 31 AD3d 898 [3d Dept 2006]). As noted above, petitioner was sentenced to an indeterminate term of imprisonment for second degree murder with a maximum sentence of life. While review of the sentencing minutes, which were before the Board, demonstrates that the sentencing judge exercised his discretion to allow petitioner to be considered for parole on the murder conviction after only 18 years, it was not a guarantee that the responsible parole officials would grant discretionary parole at any point prior to the maximum expiration date.
Finally, petitioner has failed to demonstrate that Commissioner Smith abused his discretion or otherwise erred in failing to recuse himself. In making this argument, petitioner relies upon several news stories and an editorial that appeared in the Daily News. The thrust of these pieces was that petitioner had sought to adjourn his parole hearing to “shop” for parole commissioners more likely to be sympathetic to his case. An August 31, 2010 story claimed that petitioner had a “good shot” of obtaining two of three necessary votes from Commissioners *447 Ross and Brown, and an editorial of the same date was critical of Commissioner Ross. Thereafter, Commissioner Ross recused herself from petitioner’s case, thereby causing the scheduled September 13, 2010 hearing to be adjourned. In both the August 31, 2010 story and a follow-up story published shortly after Commissioner Ross’s recusal, Commissioner Smith was described as “conservative,” and it was implied that he would vote against petitioner’s release.
At the November 9, 2010 parole hearing, petitioner advised the Board that he felt uncomfortable with Commissioner Smith’s presence on the panel in light of these publications, particularly since Commissioner Ross had chosen to recuse herself. Commissioner Smith assured petitioner that the Parole Board does not “operate based on any media articles” and that nothing in any newspaper article was “going to sway his judgment.” Further, Commissioner Lemons informed petitioner that “as we sit here today, we sit here with no biases toward any actions to that extent [concerning the postponements of early parole hearings and the contents of the newspaper articles].”
Petitioner has failed to cite any positive provision of law that compelled Commissioner Smith to recuse himself. Nor has petitioner shown that Commissioner Smith’s decision not to recuse constitutes an abuse of discretion. Commissioner Smith was mentioned only in passing in the above-referenced news articles, and mere speculation by the media about what he might or might not do when presented with petitioner’s application is insufficient to raise reasonable questions concerning his partiality. And there is no proof that Commissioner Smith harbored any bias against petitioner or decided petitioner’s application for parole other than by a conscientious weighing of the evidence before him.
As petitioner has failed to demonstrate that the Parole Board’s determination as a whole demonstrates irrationality bordering on impropriety, this court declines to intervene (see Matter of Silmon, 95 NY2d at 476; Matter of Cox, 11 AD3d at 767).
Accordingly,[4] the petition is denied.

. Petitioner’s administrative appeal was denied on or about July 26, 2011.

. As the amendments to Executive Law § 259-i (2) (c) merely consolidated all of the factors governing release decisions into a single section of the Executive Law and the court finds infra that the Parole Board did consider all of the required factors, the retroactivity of this provision is of no moment here.

. Thus, petitioner describes the Parole Board as “paying brief lip service to [his] many accomplishments and the other statutory factors it is legally obligated to consider” and argues that “the Board failed to balance [these factors against] the seriousness of the crime” (petition 1Í 32; see also id. 11 34).

. The court has considered petitioner’s remaining arguments and contentions and finds them all to be without merit.