OPINION OF THE COURT
Richard Mott, J.
Petitioner filed this CPLR article 78 proceeding to challenge respondents’ August 21, 2012, decision denying him release on parole.
Petitioner, age 59, is serving a lVs-to-J-year sentence.[1] He was convicted in New York County on February 17, 2011. At or about the time of his sentencing, petitioner made full restitution in the amount of $19 million, was stripped of his licenses and barred from participating in the securities industry, and faced automatic disbarment by virtue of his conviction. The Department of Probation recommended that petitioner be sentenced to a term of probation; the prosecution requested an unspecified term of incarceration. The sentencing court found that “it is not likely that Morris will ‘do it again’ in the future.”
Petitioner was presumptively eligible for parole on June 18, 2012 (see Correction Law § 805), and when he met the Parole *228 Board, on August 21, 2012, he already had served 25 months,[2] far in excess of the 12-to-18-month guideline, as confirmed in his Inmate Status Report. He had no disciplinary infractions, and a COMPAS evaluation determined he had the lowest possible risk to recidivate. Nevertheless, he was denied parole. The panel stated:
“Denied 9 months. Next appearance, November, 2012.
“Parole denied.
“After a personal interview, record review, and deliberation, this panel finds your release is incompatible with the public safety and welfare. Required statutory factors have been considered, including your risk to the community, rehabilitation efforts, and your needs for successful community reintegration.
“Your instant offense involved a guilty plea to General Business Law Section 352-c (6), wherein you engaged in a systematic series of fraudulent stock market-related transaction. Your course of conduct over a period of multiple years show[s] a disregard for your ethical responsibilities as a licensed security broker and attorney.
“Consideration has been given to your receipt of an Earned Eligibility Certificate, good behavior, program accomplishments (as able), and document submissions.
“Due to your actions over a period of time and deceitful nature of those activities which placed the integrity of the New York State Common Retirement Fund at risk, your release at this time is denied. There is a reasonable probability you would not live and remain at liberty without violating the law.”
It is well settled that release on parole is a discretionary function of the Parole Board and that its determination will not be disturbed by the court unless it is shown that the Board’s decision is irrational “bordering on impropriety” and that the determination was, thus, arbitrary and capricious. (Matter of Silmon v Travis, 95 NY2d 470 [2000]; Matter of King v New York State Div. of Parole, 190 AD2d 423 [1st Dept 1993], affd 83 NY2d 788 [1994].) In reviewing the Board’s decision, the court *229 must also examine whether the Board’s discretion was properly exercised in accordance with the parole statute. (Matter of Thwaites v New York State Bd. of Parole, 34 Misc 3d 694 [2011].)
Executive Law § 259-i (2) (c) provides general criteria the Board must consider. And the statute provides the Board with specific factors to consider in determining whether the general criteria have been met. (See Executive Law § 259-i [2] [c] [A] [i]-[viii].)
The 2011 Amendment
Executive Law § 259-c (4) was amended in 2011 to require the Parole Board to promulgate new procedures in making parole release decisions. These required procedures “shall incorporate risk and needs principles to measure the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assist members of the state board of parole in determining which inmates may be released to parole supervision.” (Id.)
This statutory change sought to modernize the work of the Parole Board by requiring the Board to adopt procedures that incorporate social science research in assessing post-release and recidivism risks. (Matter of Thwaites v New York State Bd. of Parole, citing Genty, Changes to Parole Laws Signal Potentially Sweeping Policy Shift, NYLJ, Sept. 1, 2011.) Specifically, the statute replaced “static, past-focused ‘guidelines’ with more dynamic present and future-focused risk-assessment ‘procedures.’ ” (34 Misc 3d at 699.) Moreover, “[t]he Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 193 [a]; see Matter of Stein, 131 AD2d 68, 71 [2d Dept 1987].) Accordingly, respondents’ assertions that the legislative amendment maintained the status quo ante must be rejected.
The Board’s Rule-Making Function and the Requirement to File
Before the 2011 amendment, Executive Law § 259-c (4) required the establishment of “written guidelines” for use in making parole determinations. The statute did not require respondent to engage in rulemaking. Accordingly, respondent adopted 9 NYCRR 8001.3 (a), including a grid setting forth sentence guidelines. The guidelines explicitly stated that the time ranges in the grid “are merely guidelines[, and mjitigating or aggravating factors may result in decisions above or below the guidelines” (9 NYCRR 8001.3 [c]; see Matter of Lue-Shing v *230 Travis, 12 AD3d 802, 803-804 [3d Dept 2004]). Thus, the guidelines adopted under the old statute were not “regulations” (id. at 804, citing Matter of Alca Indus. v Delaney, 92 NY2d 775, 778-779 [1999]), and their validity was not dependent upon filing with the Secretary of State. (Id.)
The amended, 2011 version of Executive Law § 259-c (4), on the other hand, required respondent to engage in rulemaking. The amended statute mandated the establishment of “written procedures” which, inter alia, “shall incorporate risk and needs principles to measure the rehabilitation of persons appearing before the board” and “the likelihood of success of such persons upon release.” By its terms[3] the 2011 amendment of Executive Law § 259-c (4) mandated the adoption of new rule(s) or regulation(s), i.e., the adoption of “a fixed, general principle to be applied by an administrative agency” (Matter of Lue-Shing v Travis, 12 AD3d at 803, citing Matter of New York City Tr. Auth. v New York State Dept. of Labor, 88 NY2d 225, 229 [1996], quoting Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health, 66 NY2d 948, 951 [1985]). Put simply, the amended statute required that respondent develop written procedures that implement risk and needs principles, determine the likelihood of an inmate’s success upon release, and adopt those procedures as an exercise of its rule-making power.
Respondent misreads the amendment, by positing that “where an agency renders determinations based on a case-by-case basis analysis of the facts of a particular matter, there is no requirement that the guidelines it employs be promulgated as rules or regulations” (citations omitted). However, unlike the former section 259-c (4), the amendment does not authorize respondents to write guidelines which might include “interpretive statements and statements of general policy . . . [that] are merely explanatory” (State Administrative Procedure Act § 102 [2] [b] [iv]). Rather, the amendment requires respondents to “establish written procedures,” i.e., enumerate the materials the Board would use to determine an inmate’s likelihood of success upon release.
Notwithstanding the plain language of the amendment, and the requirement that such procedures be in effect by October 1, *231 2011, respondent inexplicably still has adopted no new procedures.[4] To the contrary, respondent untenably states, “Executive Law § 259-c (4) dictates neither how new ‘written procedures’ are to be established, nor in what manner ‘risk and needs principles’ are to be incorporated within them.” (O’Donnell aff 15; Munkwitz affirmation 11 20.) Further, respondent sophistically argues that the October 5, 2011 memorandum written by respondent Evans (the Evans memorandum) “serves as” the statutorily required procedures (O’Donnell aff 1i 17; Tracy affirmation lit 12, 20) even though the Evans memorandum neither has been adopted as a formal rule (see 9 NYCRR 8000.1), nor has it been filed with the Secretary of State. (See e.g. Executive Law § 259-c [11] [requiring filing of rules with the Secretary of State]; State Administrative Procedure Act §§ 202, 203; Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 175 [1993].) The court rejects these assertions.
The Effect of the Amendment
Respondents have flip-flopped concerning the effect of this amendment. On one hand, the October 5, 2011 Evans memorandum asserted that despite amendment of the statute, “[p]lease know that the standard for assessing the appropriateness for release, as well as the statutory criteria you must consider has not changed.” (See Tracy affirmation 1i 15.) A month later, on November 10, 2011, respondent Evans testified before a legislative committee that said procedures had not yet been developed. (Goldfeld affirmation, exhibit K.) On April 18, 2012, six months after the effective date of the amendment, respondent stated that written procedures “are currently being developed,” undeniably evincing respondents’ knowledge that such procedures had been mandated. Indeed, when respondent Evans testified before the legislative committee on November 10, 2011, she stated that respondents were working on the development of a transitional accountability plan[5] (TAP) that “will be the instrument that will measure the rehabilitation of *232 persons appearing before the Board as well as their likelihood of success in the community when released” (exhibit K at 19). Acknowledging the requirement for written procedures (exhibit K at 19), she indicated that TAP and COMPAS would be used after a pilot period “when assessing the appropriateness of an inmate’s release to community supervision.”
Clearly, contrary to respondents’ assertions, the Evans memorandum itself is not and cannot serve as the required procedures. Moreover, the authorities[6] relied upon by respondents fail to establish that it has complied with the rule-making requirements imposed by the amendment of Executive Law § 259-c (4) in 2011.
Disregard of a legislative mandate through an administrative agency’s inaction, as here, is arbitrary and capricious and contrary to law. (See Matter of Mayfield v Evans, 93 AD3d 98, 107 [1st Dept 2012], citing People ex rel. Sheldon v Board of Appeals of City of N.Y., 234 NY 484, 495 [1923] [“We must assume that the law-making body intended to effect a material change in the existing law, otherwise the legislation would be nugatory”].) Here, because no written procedures have been promulgated concerning how parole decisions should be made, the legislative mandate has been ignored. By reason thereof, petitioner’s August 21, 2012 parole hearing was unlawful. Consideration of Statutory Factors
The Parole Board is required to consider a number of factors in determining whether an inmate should be released on parole. (Executive Law § 259-i; Matter of Malone v Evans, 83 AD3d 719 [2d Dept 2011], citing Matter of Huntley v Evans, 77 AD3d 945, 947 [2d Dept 2010], and Matter of Miller v New York State Div. *233 of Parole, 72 AD3d 690, 691 [2d Dept 2010].) While the Board need not expressly discuss each of these factors in its determination (see Matter of King v New York State Div. of Parole, 83 NY2d 788, 790 [1994]) or afford these factors equal weight (see Matter of Wan Zhang v Travis, 10 AD3d 828 [3d Dept 2004]), it is the obligation of the Parole Board to give fair consideration[7] to each of the statutory factors, and where, as here, the record convincingly demonstrates that the Board in fact failed to consider the proper factors, the court must intervene. (Matter of King v New York State Div. of Parole, 190 AD2d 423, 431 [1st Dept 1993].)
Focusing Exclusively on the Nature of the Crime
Here, the court finds that the Board’s decision focused almost, if not exclusively, on petitioner’s crime. (See supra at 228.) While the seriousness of the crime remains acutely relevant in determining whether petitioner should be released, the record in this case demonstrates conclusively that the Board failed to take into account and fairly consider any of the other relevant statutory factors. (See e.g. Matter of Silmon v Travis, 95 NY2d 470, 476-477 [2000].) When, as here, the Parole Board focuses entirely on the nature of petitioner’s crime, there is a strong indication that the denial of parole is a foregone conclusion that does not comport with statutory requirements. (See Matter of Winchell v Evans, 32 Misc 3d 1217[A], 2011 NY Slip Op 51347[U] [Sup Ct, Sullivan County 2011], citing Matter of Stanley v New York State Bd. of Parole, 31 Misc 3d 911 [Sup Ct, Orange County 2011].) Indeed, the Board’s passing mention of petitioner’s “receipt of an Earned Eligibility Certificate, good behavior, program accomplishments (as able), and document submissions” and its conclusory statement that “[Required statutory factors have been considered, including your risk to the community, rehabilitation efforts, and your needs for successful community reintegration,” were woefully inadequate in the circumstances of this case to demonstrate that the Board *234 weighed or fairly considered the required statutory factors. (See Matter of Rios v New York State Div. of Parole, 15 Misc 3d 1107[A], 2007 NY Slip Op 50529[U] [Sup Ct, Kings County 2007], citing Matter of King v New York State Div. of Parole, 190 AD2d at 434.)
Specifically, the record demonstrates that the Board inexplicably failed to consider and weigh myriad relevant factors, all of which categorically supported petitioner’s release on parole. These include, but are not limited to, the facts that: the instant crime was petitioner’s first and only contact with the law; the sentencing judge found that he would not commit another crime; he had already served 25 months’ imprisonment, far in excess of his 12-to-18-month guideline; he had an exemplary prison record and no disciplinary infractions; a COMPAS evaluation determined him to have the lowest possible risk to recidivate; he lost all of his licenses, was barred from any work in the securities industry, and from all business dealings with the State of New York, rendering a subsequent, similar crime impossible; he was subject to automatic disbarment; he achieved a certificate of earned eligibility, making him presumptively eligible for parole; his defense lawyer strongly supported his parole application; while in prison he assisted other inmates with their education; although he owns his own home, he agreed to reside elsewhere in the event the Board deemed it more appropriate; he repeatedly expressed his genuine remorse; he made full restitution in the amount of $19 million; he had employment available to him upon release; upon being released he expressed his desire to work for a not-for-profit corporation, to perform volunteer work, and to spend as much time as possible with his 90-year-old mother; and a group of 30 people agreed to assist him with his reintegration into the community, each promising to do so one day per month. Despite all of these factors, and the complete absence of any countervailing factors from which any risk to the community or that he would reoffend could remotely be inferred, the Board astonishingly concluded, “There is a reasonable probability you would not live and remain at liberty without violating the law.” Such an arbitrary decision can be reached solely by ignoring statutorily required factors. (See e.g. Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [“An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts”]; see e.g. Matter of Wallman v Travis, 18 AD3d 304 [1st Dept 2005]; Matter of Coaxum v New York State Bd. of Parole, *235 14 Misc 3d 661 [Sup Ct, Bronx County 2006]; Matter of Weinstein v Dennison, 7 Misc 3d 1009[A], 2005 NY Slip Op 50518[U] [Sup Ct, NY County 2005].)
In concluding that petitioner’s release was “incompatible with the public safety and welfare” and that if released there was “a reasonable probability that [he would] not live and remain at liberty without violating the law,” on this record, the Board’s mere recitation of the materials it purportedly considered that were favorable to petitioner provides no assurance whatsoever to this court that the Board indeed fairly considered such materials, particularly since the only reason articulated therefor was petitioner’s crime.
Explanation of Reasons for Denying Parole
The Board’s decision[8] utterly failed to explain its reasoning for denying petitioner parole. Indeed, here, the Board failed to explain, other than the facts of the crime, why petitioner’s release was “incompatible with the public safety and welfare” and why there was “a reasonable probability [he] would not live and remain at liberty without violating the law.” As noted in Matter of Flynn v Travis (Sup Ct, Westchester County, Nov. 17, 1999, West, J., index No. 19168/98), the Board “should be well able to articulate the reasoning” for its decision, “if it were come to reasonably, in a non-arbitrary, un-capricious manner.”
Conclusion
As the court found in Matter of Cotto v Evans (2013 NY Slip Op 30222[U], *4 [Sup Ct, St. Lawrence County 2013]), this court finds that petitioner’s parole denial was not rendered in accordance with law and must be overturned:
“[T]his Court finds nothing in the record to suggest that the written procedures mandated by the amended version of Executive Law § 259-c(4) were established, much less implemented and considered in the context of determining whether or not petitioner should be released to parole supervision. Accordingly, the Court finds that the December 2011 parole denial determination was not rendered in accordance with law and must be overturned, with the matter remitted to the Board of Parole for de novo *236 discretionary parole release consideration. See Thwaites v. New York State Board of Parole, 34 Misc 3d 694. See also Lichtel v. Travis, 287 AD2d 83.”
Moreover, the court finds that the Board failed to fairly consider and weigh required statutory factors in reaching its decision.
Petitioner already has appeared before the Parole Board five times, and has had three parole hearings.[9] Petitioner has filed three administrative appeals and two prior article 78 proceedings raising the same issues as here. His present conditional release date is October 18, 2013. Time is of the essence in providing petitioner with the relief herein.
Accordingly, the Board’s determination of August 21, 2012, is vacated and the matter is remanded to the Board which, on or before April 22, 2013, shall hold a new parole hearing consistent with this decision and order before a different panel and issue a decision thereon within two days of the hearing, a copy of which decision shall be provided to the court forthwith.

. He served most of his sentence in protective custody.

. Because the amendment of Executive Law § 259-c (4) was “nestled into a 2011-2012 executive budget bill and did not result from a legislative initiative, there was no justification memo from a sponsoring lawmaker, no approval message from the governor — nothing to provide insight into what was intended.” (Caher, Effect of Risk Assessment Rule On Parole Decisions Is Unclear, NYLJ, Apr. 30, 2012.)

. An administrative agency’s adoption of “procedures” is clearly a subject of the agency’s rule-making power. The adopted procedures must be consistent with enabling legislation and as an exercise of rulemaking, the “procedures” must be promulgated and filed with the Secretary of State. (See State Administrative Procedure Act § 102 [2] [a] [i]; Executive Law § 259-c [11].)

. Correction Law § 71-a, which became effective on October 1, 2011, required the development of a TAP “[u]pon admission of an inmate to . . . custody.” Respondent Fischer testified before a legislative committee in November 2011, that “TAP will go live by July 1, [2012]” and that “three *232 months [thereafter] everyone will be on it.” (Goldfeld affirmation, exhibit K, at 47-48.) Despite this testimony, in which respondent acknowledged that TAP would apply to every inmate, regardless of date of incarceration, respondents argue that TAP only applies to newly admitted inmates. (See Munkwitz affirmation U 32.) The court rejects that argument. (See Statutes § 321 [“Generally, remedial statutes are liberally construed to carry out the reforms intended and to promote justice”]; Matter of Dewine v State of N.Y. Bd. of Examiners of Sex Offenders, 89 AD3d 88, 92 [4th Dept 2011]; Matter of Crucible Materials Corp. v New York Power Auth., 50 AD3d 1353, 1355-1356 [3d Dept 2008].)

. Matter of Gass v New York State Bd. of Parole, Sup Ct, Ulster County Feb. 8, 2013, Connolly, J., index No. 12-13199; Matter of Ortiz v Evans, Sup Ct, Albany County Dec. 3, 2012, Platkin, J., index No. 3933-12; Matter of Rodriguez v New York State Div. of Parole, Sup Ct, Albany County, Nov. 29, 2012, Platkin, J., index No. 3932-12; Matter of Melendez v Evans, Sup Ct, Sullivan County, Sept. 27, 2012, LaBuda, J., index No. 1973-12 (all of which are not binding on this court); cf. Matter of Cotto v Evans, 2013 NY Slip Op 30222(U) (St. Lawrence County Jan. 22, 2013); Matter of Mercer v New York State Bd. of Parole, Sup Ct, Albany County Feb. 22, 2013, Mott, J., index No. 6330-12.

. In testimony before a legislative committee, respondent conceded that generally commissioners have about one half hour to review a case before it is heard, and that although files are available the day before a scheduled hearing, some commissioners review the files the morning of the hearing. (Goldfeld affirmation, exhibit K, at 57-59.) Here, petitioner’s submissions (exhibit J) alone exceed 100 pages. Clearly, in addition to the other materials required to be reviewed in connection with petitioner’s parole determination, it would take the commissioners far more than one half hour to read and evaluate petitioner’s submissions, let alone all of the other materials required to be reviewed.

. The Board is required to inform the inmate in writing of the factors and reasons for the denial of parole, and “[s]uch reasons shall be given in detail and not in conclusory terms.” (Executive Law § 259-i [2] [a]; see Matter of Malone; Matter of Mitchell v New York State Div. of Parole, 58 AD3d 742 [2d Dept 2009].)

. Parole hearings have been held on February 21, August 21, and November 14, 2012. On two occasions, a parole hearing was not conducted, once because the commissioners did not have petitioner’s file and once because of recusals.